Teresita G. **COSTELO**, et al, Plaintiffs,

v.

Michael **CHERTOFF**, et al, Defendants.

No. SACV 08–688 JVS (SHx).

United States District Court,
C.D. California,
Southern Division.

July 16, 2009.

Nancy Ellen Miller, Robert L. Reeves, Reeves and Associates APC, Pasadena, CA, for Plaintiffs.

Elizabeth J. Stevens, Gisela A. Westwater, United States Department of Justice, Washington, DC, Amy Carole Prokop, Carl Shusterman Law Offices, Los Angeles, CA, for Defendants.

## ORDER RE MOTION TO CERTIFY CLASS

JAMES V. SELNA, District Judge.

Plaintiffs Teresita G. Costelo ("Costelo") and Lorenzo P. Ong ("Ong") (collectively, "Plaintiffs") seek certification of a class for injunctive and declaratory relief against Defendants Michael Chertoff, et al. (collectively, "Defendants"). Defendants oppose. The motion is GRANTED, as set forth below.

## I. Background

Plaintiffs' requested relief involves the interpretation of a provision of the Child Status Protection Act ("CSPA"), codified at § 203(h)(3) of the Immigration and National Act ("INA"), 8 U.S.C. § 1153(h)(3) (hereinafter " § 203(h)(3)").

Plaintiffs previously moved for class certification in July 2008 (Docket No. 4), which was denied without prejudice on the grounds that the Court "would benefit greatly from any interpretation of § 203(h)(3) which the BIA [Board of Immigrant Appeals] might issue" in two similar cases pending before the BIA (Docket No. 32, at 1). As a result, the case was "stayed in its entirety for 180 days to afford the BIA an opportunity to issue an interpretation of § 203(h)(3) in the first instance." (Id. at 2.) Prior to the June 15, 2009 hearing on this motion, the BIA had issued no such interpretation and the stay had expired. Then, the day after the hearing, the BIA decided MATTER OF WANG, 25 I. & N. Dec. 28 (B.I.A. June 16, 2009), as set forth below.[1]

Presently before the Court is Plaintiffs' second motion for class certification.

## II. Legal Standard

A motion for class certification involves a two-part analysis. First, Plaintiffs must demonstrate that the proposed class satisfies the requirements of Rule 23(a): (1) the members of the proposed class must be so numerous that joinder of all claims would be impracticable; (2) there must be questions of law and fact common to the class; (3) the claims or defenses of the representative parties must be typical of the claims or defenses of absent class members; and (4) the representative parties must fairly and adequately protect the interests of the class. Fed. R.Civ.P. 23(a).

Second, Plaintiffs must meet the requirements of at least one of the subsections of Rule 23(b). Here, Plaintiffs contend that the

---

1. While the parties dispute whether Wang was properly decided, and whether it is a reasonable opinion subject to Chevron deference, there is no dispute that it addressed nearly the same issue presented here. (Supp'l Mot. Br. 1; Supp'l Opp'n Br. 1–2; see also Amicus Br. 1–3.)

class qualifies under Rule 23(b)(2), for which a class may be maintained where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed.R.Civ.P. 23(b)(2).

The party seeking certification must provide facts sufficient to satisfy the requirements of Rule 23(a) and (b). *Doninger v. Pac. Nw. Bell, Inc.,* 564 F.2d 1304, 1308–09 (9th Cir.1977). In turn, the district court must conduct a rigorous analysis to determine whether the prerequisites of Rule 23 have been met. *Gen. Tel. Co. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). While the Court's analysis must be rigorous, Rule 23 confers "broad discretion to determine whether a class should be certified, and to revisit that certification throughout the legal proceedings before the court." *Armstrong v. Davis,* 275 F.3d 849, 872, n. 28 (9th Cir.2001).

In *Falcon,* the Supreme Court reiterated the well-recognized precept that " 'the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.' " *Falcon,* 457 U.S. at 160, 102 S.Ct. 2364 (quoting *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 469, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978)). Nevertheless, there is "nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action." *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974).

## III. *Discussion*

According to Plaintiffs, the "issue before this Court is whether the government can ignore the requirements of [ ] § 203(h)(3) and refuse to adjudicate applications for lawful permanent residence under the correct (original) priority date." (Mot.Br.16.) More precisely, as set forth below, the issue is

whether the automatic conversion and date retention provisions of § 203(h)(3) apply to aliens who age out of eligibility for an immigrant visa as the derivative beneficiary of a third- or fourth-preference visa petition, and on whose behalf a second-preference petition is later filed by a different petitioner.[2] An understanding of this issue requires some context.

Over a decade ago, "an enormous backlog of adjustment of status (to permanent residence) applications ... developed at the INS." H.R.Rep. No. 107–45, at *2 (2001). *as reprinted in* 2002 U.S.C.C.A.N. 640, 641. As a result, child beneficiaries of visa applications often would "age-out," or turn twenty-one, before the application was processed, thereby requiring the applicant to shift into a lower preference category and be placed "at the end of a long waiting list for a visa."[3] *Id.* The CSPA was enacted on August 6, 2002 "essentially ... to provide relief to children who might 'age out' of their beneficiary status because of administrative delays in visa processing or adjustment application adjudication." *Wang,* 25 I. & N. Dec. at 31: *accord Padash v. INS,* 358 F.3d 1161, 1167 (9th Cir.2004).

Among other things, the CSPA amended § 203 of the INA by adding what is now subsection (h). This provision allows certain aliens to maintain the status of a child of a lawful resident alien for purposes of the 2A preference category even after turning twenty-one. Specifically, § 203(h) provides that an alien's age for purposes of the 2A category is to be determined by subtracting the time that the petition for classification was pending from the alien's age at the time that a visa number becomes available. 8 U.S.C. § 1153(h)(1)-(2); *Baruelo v. Comfort,* No. 05 C 6659, 2006 WL 3883311, at *3 (N.D.Ill. Dec. 19, 2006). In addition, the statute provides that if the alien is determined to be twenty-one or older after applying this calculation, the "petition shall automatically be converted to the appropriate category and the alien shall retain the original priority

---

**2.** For the preference categories, see 8 U.S.C. § 1153(a)(1)-(4).

**3.** For immigration purposes, a "child" is defined as an unmarried individual under age twenty-one. 8 U.S.C. § 1101(b)(1).

date issued upon receipt of the original petition"—in other words, the date the original petition was filed. 8 U.S.C. § 1153(h)(3); *accord Padash*, 358 F.3d at 1174.

■ Plaintiffs' complaint challenges Defendants' lack of a uniform policy implementing § 203(h)(3), and seeks declaratory and injunctive relief on behalf of members of a proposed class. In their motion, as amended,[4] Plaintiffs move to certify the following two subclasses:

> Individuals who a) have or will have obtained lawful permanent resident status as a result of being a primary beneficiary of a prior family or employment based visa petition or diversity immigrant visa application on or after August 6, 2002; b) are the parents of an adult child or children (sons and daughters) who are or were a derivative beneficiary of their prior family or employment based visa petition or diversity immigrant visa application; c) have or will have filed a subsequent family based immigrant visa petition(s) (Form I–130) for their adult child or children (sons and daughters) under the F2B category; and d) whose subsequent family based immigrant visa petition(s) (Form I–130) is entitled to the automatic retention of the original priority date of the petitioner's prior family or employment based visa petition or diversity immigrant visa application pursuant to INA § 203(h)(3).

> Individuals who a) are or were a derivative beneficiary of a family or employment based visa petition or diversity immigrant visa application where the primary beneficiary obtained or will obtain lawful permanent resident status on or after August 6, 2002; b) whose age is 21 years or older for the purposes of INA §§ 203(a)(2)(A) and (d) as determined under INA § 203(h)(1); c) whose family or employment based visa petition or diversity immigrant visa application is entitled to the automatic conversion to the F2B category and retention of the original priority date of the original

family or employment based visa petition or diversity immigrant visa application pursuant to INA § 203(h)(3); and d) face future and/or ongoing separation from family members as a result of Defendants' failure to automatically convert the immigrant visa petition and retain the original visa petition priority date pursuant to INA § 203(h)(3).[5]

(Mot.Br.2.) But the complaint defines the class as:

> All persons who have filed an immigrant visa petition(s) for their child or children with a request for the original priority date *or* are the derivative beneficiary of an immigrant visa petition who face future and/or ongoing separation from family members as a result of the Defendants [sic] failure to automatically convert and retain the original visa petition priority date pursuant to Section 3 of the Child Status Protection Act.

(Compl. ¶ 12, emphasis supplied.) The complaint also includes two subclasses:

> Parents who have filed an immigrant visa petition or are the adult children beneficiaries of an immigrant visa petition who face separation from each other as a result of the Defendants [sic] refusal to automatically convert and retain the original priority date of the original visa petition pursuant to Section 3 of the Child Status Protection Act.

> Parents who have filed an immigrant visa petition who face separation from their children as a result of the Defendants [sic] failure to act regarding the automatic conversion and retention of the original priority date of the original visa petition pursuant to Section 3 of the Child Status Protection Act.

(*Id.* at 9–10.) The Court is bound to class definitions provided in the complaint and,

---

4. For the motion to amend, see Docket No. 57.

5. Costello amends the subclasses in her original motion to include, *inter alia*, references to diversity immigrant visa applications. (*Compare* Docket No. 53, *with* Docket No. 57.) Subsection

(a) of 8 U.S.C. § 1153 provides a preference allocation for family-based visa petitions, subsection (b) for employment-based petitions, and subsection (c) for diversity immigrant visa applications.

absent an amended complaint, will not consider certification beyond it.[6]

Plaintiffs seek certification under Rule 23(a) and (b)(2). Before turning to this two-part analysis, however, the Court takes up the logic that caused it to stay this case in the first place—that the BIA should be afforded an opportunity to interpret § 203(h)(3).

### A. The BIA Cases

As a preliminary matter, Defendants contend that judicial review of this motion should be denied, or further delayed, to the extent that administrative action by the BIA may preclude class certification or require additional review by this Court.

The Court has already stayed this action for 180 days to afford the BIA an opportunity to interpret § 203(h)(3)—the central provision at issue here—in two related cases pending before the BIA.[7] Notably, the BIA recently decided one of those cases. Based on its reading of § 203(h)(3) and the legislative history, the BIA in *WANG* held that the automatic conversion and priority date retention provisions did not apply to an alien who aged out of eligibility for an immigrant visa as the derivative beneficiary of a fourth-preference visa petition, and on whose behalf a second-preference petition was later filed by a different petitioner. 25 I. & N. Dec. at 38–39. Notwithstanding Defendants' arguments in their supplemental brief, the BIA opinion in *WANG* does not make this case

any less appropriate for class certification. To the contrary, it is persuasive authority on a question of law common to the putative class members. This point is neatly illustrated by Defendants themselves, who point out that *WANG* "specifically declined to follow Maria T. Garcia, an unpublished, nonprecedential decision often cited by Plaintiffs."[8] (Supp'l Opp'n Br. 2.)

Accordingly, the Court does not find *WANG* a reason to delay further consideration of this motion, much less deny class certification.

■ As to the other case pending before the BIA, Defendants have apprised the Court of BIA correspondence, dated April 16, 2009, indicating that this "case[is] under active consideration ... and [a] decision[ ] may be expected soon." (Docket No. 52, Ex. A.) With respect to this case, Defendants assert that the Court's interpretation of § 203(h)(3) would be subject to immediate review as soon as the BIA's decision is issued.

■ To support this claim, Defendants vaguely allude to prudential exhaustion and the *Chevron* doctrine. (Opp'n Br. 6–7.) Prudential exhaustion counsels courts to exhaust administrative remedies; it is discretionary in this context,[9] and only applies where:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would en-

---

6. *Berlowitz v. Nob Hill Masonic Mgmt., Inc.,* No. C–96–01241 MHP, 1996 WL 724776, at *2 (N.D.Cal. Dec. 6, 1996) (rejecting plaintiff's attempt to certify a class different from that alleged in the complaint, because the "court is bound by the class definition provided in the complaint ... and will not consider certification of the class beyond the definition provided in the complaint unless plaintiffs choose to amend it"); *see also Ortiz v. McNeil–PPC, Inc.,* Nos. 07cv678–MMA(CAB), 2009 WL 1322962, at *2 (S.D.Cal. May 8, 2009); *Stuart v. Radioshack Corp.,* No. C–07–4499 EMC, 2009 WL 281941, at *2 (N.D.Cal. Feb. 5, 2009). *But see Pop's Pancakes, Inc. v. NuCO2, Inc.,* 251 F.R.D. 677, 680 n. 1 (S.D.Fla. 2008).

7. The cases are *Matter of Wang* and *In the matter of Patel:* "*Wang* involves the aging-out of a derivative beneficiary of a family preference petition[;] *Patel* involves the aging-out of a derivative bene-

ficiary of an employment preference petition." (Opp'n Br. 22–23.)

8. Defendants cite to *Wang,* 25 I. & N. Dec. at 33 n. 2, citing *Matter of Garcia,* A79 001 587, 2006 WL 2183654, at * (B.I.A. June 16, 2006), which "agree[d] with the respondent that where [a child] was classified as a *derivative* beneficiary of the original petition, the 'appropriate category' for purposes of section 203(h)(3) is that which applies to the 'aged-out' derivative vis-a-vis the *principal beneficiary* of the original petition."

9. To the extent that the BIA provides available remedies, the Ninth Circuit in *Sun v. Ashcroft,* observed that "a court is free to require exhaustion of such remedies—not because of any jurisdictional objection or statutory command but simply because it makes sense." 370 F.3d 932, 942 (9th Cir.2004) (internal quotation marks omitted).

courage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Gonzales v. DHS*, 508 F.3d 1227, 1234 (9th Cir.2007) (internal quotation marks omitted). Here, none of these prerequisites are clearly implicated. Further guidance by the BIA, while helpful, is not necessary because the BIA has already provided a relevant interpretation of § 203(h)(3). The Ninth Circuit in *Padash* has also provided a general interpretation of § 203(h), as set forth in greater detail below. There is also nothing to suggest that Plaintiffs are attempting to bypass the BIA. The Court has afforded the BIA an opportunity to construe § 203(h)(3). The BIA has done so in *Wang*, which is more relevant to this case because, as here, it involves family-based petitions, as opposed to employment-based petitions. Moreover, despite recent assurances, there is no guarantee that the BIA will issue its opinion as to employment-based petitions any time soon, which in any event would be irrelevant to the class defined below. Previously, the Court expressed "sensitiv[ity] to Costelo's concern that (1) the BIA may chose not to issue a written opinion on the pending § 203 cases; and (2) there is no time limit in which the BIA must rule on those cases, if ever." (Docket No. 32, at 1.) Finally, there is no suggestion that the BIA has erred below and thus requires an allowance to correct its mistake; the BIA has simply failed to act as to the other § 203 case.

■ In *National Cable & Telecommunications Ass'n v. Brand X Internet Services*, 545 U.S. 967, 983, 125 S.Ct. 2688, 162 L.Ed.2d 820 (2005), cited by Defendants, the Supreme Court made the following observation in reference to the *Chevron* doctrine of administrative deference: "Only a judicial precedent holding that the statute unambiguously forecloses the agency's interpretation, and therefore contains no gap for the agency to fill, displaces a conflicting agency construction." On this basis, Defendants assert that the

"added work and expense of litigating this issue twice on a class scale militates against class certification at this time." (Opp'n Br. 7–8.) This argument lacks force now that the BIA has decided *WANG*.[10]

Although *WANG* is more directly on point, the Court may also benefit from the Ninth Circuit's interpretation of § 203(h) in a related case. In *Padash*, the Ninth Circuit explained that, under the CSPA, an individual eligible for permanent residence as a derivative beneficiary under 8 U.S.C. § 1153(d), who is over twenty-one years of age, may have his status adjusted provided that: (1) he was a "child" on the date upon which the immigrant visa became available for his parents, (2) he applied for adjustment of status within one year of availability, and (3) he aged-out while waiting for his application to be adjudicated. 358 F.3d at 1167 (citing 8 U.S.C. § 1153(h)(1)(A)-(B)). While the circuit did not interpret § 203(h)(3), specifically, it did endorse a broad reading of CSPA, generally:

> Congress had but one goal in passing the [CSPA]—to override the arbitrariness of statutory age-out provisions that resulted in young immigrants losing opportunities, to which they were entitled, because of administrative delays. Accordingly, *adopting a restrictive reading of the statute in order to limit relief, would contravene Congress's intent, and the purpose and objective of the law.*

*Id.* at 1174 (emphasis supplied). The circuit further observed that "Congress passed the Act to provide broad protection to young immigrants who were required to wait years for their approved visas to become available, only to have agency delays in processing their applications or petitions prevent them from obtaining permanent residence status," and clarified that "Congress did not make the Act retroactive to all immigrants previously denied relief [but] only to those individuals whose cases had not yet been finally resolved, and thus only to those whose rec-

---

10. Additionally, the Court agrees that Defendants' reliance on "consular nonreviewability" is misplaced insofar as Plaintiffs seek to compel Defendants "to adopt uniform rules and policy in accordance with [ ] § 203(h)(3) rather than reviewing individual decisions of consular officers." (Reply Br. 5.)

ords were readily available to the agency." *Padash*, 358 F.3d at 1174.

At a minimum, Defendants seek to limit the scope of the class "to the Ninth Circuit in order to allow further development of this issue across the country." (Opp'n Br. 2; *see also* Supp'l Opp'n Br. 3–4.) Defendants cite *Hootkins v. Chertoff*, No. CV 07–5696 CAS (MANx), 2009 WL 57031, at *4 (C.D.Cal. Jan. 6, 2009), for the proposition that this Court should be "mindful of the importance of allowing the government to litigate legal issues before different courts throughout the country." But, unlike in *Hootkins*, the interest that other circuits have in litigating this general issue appears to be attenuated by the *Wang* decision, and by the fact that a number of other circuits have endorsed the Ninth Circuit's broad understanding of the CSPA in *Padash*, even within the past couple of months. *E.g., Midi v. Holder*, 566 F.3d 132 (4th Cir.2009); *Calix–Chavarria v. Attorney General of U.S.*, 182 Fed.Appx. 72, 75 (3d Cir.2006); *Corea v. U.S. Attorney General*, 170 Fed.Appx. 700, 701 (11th Cir.2006).

Accordingly, the Court can divine no principled reason to limit the proposed class to the Ninth Circuit. For purposes of this action, a putative class member in New Mexico is not differently situated from one in California by virtue of the fact that the former resides in the Tenth Circuit and the latter in the Ninth Circuit. The Court therefore declines to limit the scope of the class in this manner.

## B. *Rule 23(a)*

With this background the Court now turns to the question of whether the proposed class satisfies all four of the Rule 23(a) requirements, *i.e.*, numerosity, commonality, typicality, and adequacy of representation.

### 1. *Numerosity*

■ Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). Here, Plaintiffs allege that "the proposed class includes thousands." (Mot.Br.7.) Plaintiffs' counsel claims to have at least 26 such cases, but offers no supporting evidence. (*Id.*) Nor do Plaintiffs offer any support for the claim that "a large portion of the attorneys" at a recent conference had encountered similar cases. (*Id.* at 8.) Such a claim is vague and, even where Plaintiffs offer greater precision, there is nothing to substantiate their claim about the number of visas issued each year, which in any event requires the Court to speculate as to the number of putative class members.[11] (*Id.*)

Notwithstanding these shortcomings, Plaintiffs are not required "to state the exact number and identity of every class member because to do so would frustrate the purpose of class actions when recoveries may be numerous but small." *In re U.S. Fin. Sec. Litig.*, 69 F.R.D. 24, 34 (S.D.Cal.1975) (citing *Herbst v. Able*, 278 F.Supp. 664 (S.D.N.Y. 1967)). "Where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied." *Orantes–Hernandez v. Smith*, 541 F.Supp. 351, 370 (D.C.Cal.1982). Defendants do not contest that numerosity is satisfied, and the Court finds that this requirement has been met.[12] *E.g., Ark. Ed. Ass'n v. Bd. of Ed. of Portland, Ark. School Dist.*, 446 F.2d 763, 765 (8th Cir.1971) (class of twenty black teachers in school district was sufficiently numerous).

### 2. *Commonality*

■ Rule 23(a)(2) requires that questions of law or fact be common to the class. This requirement is permissively construed.

---

**11.** However, the House Judiciary Committee reported that, due to administrative delays of up to three years before the passage of the CSPA, approximately one thousand of the visa applications reviewed each year were for individuals who had aged-out since the time they had filed their petitions. *Padash*, 358 F.3d at 1172–73 (citing 2002 U.S.C.CA.N. 640, 641).

**12.** Factors relevant to the impracticability of joinder "include judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class members, financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members." *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir.1993). These factors weigh in Plaintiffs' favor.

*Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir.1998). "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.*

"[T]ypicality and commonality are similar and tend to merge." *Dukes v. Wal–Mart, Inc.,* 509 F.3d 1168, 1184 (9th Cir.2007). "Commonality examines the relationship of facts and legal issues to class members, while typicality focuses on the relationship of facts and issues between the class and its representatives." *Id.* at n. 12. Here, questions of law common to all class members include:

- Whether Defendants failed to adopt policies and procedures in accordance with § 203(h)(3);

- Whether Defendants failed to promulgate a uniform policy to implement § 203(h)(3).

- Whether § 203(h)(3) preserves a parent's original priority date for use by their unmarried sons and daughters who are twenty-one years of age or older;

- Whether Defendants' challenged practices and policies violate § 203(h)(3); and

- Whether Defendants's failure to promulgate regulations implementing § 203(h)(3) violates the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.,* due process and equal protection under the Fifth Amendment, and §§ 1 and 3 of Article II.

Most importantly, the underlying common question of law is whether the automatic conversion and date retention provisions of § 203(h)(3) apply to aliens who age out of eligibility for an immigrant visa as the derivative beneficiary of a third- or fourth-preference visa petition, and on whose behalf a second-preference petition is later filed by a different petitioner. This common question of law, and other ancillary questions, are sufficient to satisfy the permissive requirements of Rule 23(a). However, even if these questions of law are common to all class members, not all class members necessarily have standing to assert claims with respect to § 203(h)(3), as discussed below.

### 3. *Typicality*

■ In examining typicality, the Court considers "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks omitted). Like commonality, typicality is a "permissive" standard and "the focus should be on the defendants' conduct and plaintiff's legal theory, not the injury caused to the plaintiff." *Simpson v. Fireman's Fund Ins. Co.,* 231 F.R.D. 391, 396 (N.D.Cal.2005) (internal quotation marks omitted).

■ Defendants challenge the proposed class as overbroad because, *inter alia,* various subclasses lack standing. To establish standing, Plaintiffs must show injury, causation, and redressability. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). It is undisputed that the named plaintiffs themselves have standing. Costelo became a lawful permanent resident on July 22, 2004 as a primary beneficiary of a third-preference visa petition filed by her mother on January 5, 1990. (Compl.¶ 19.) She filed a second-preference petition for her two daughters on September 23, 2004, and alleges that Defendants denied one of her two daughters, a derivative beneficiary of the original petition, the retention of the January 5, 1990 priority date. (*Id.*) Ong became a lawful permanent resident on July 16, 2004 as a primary beneficiary of a fourth-preference visa petition filed by her sister on May 7, 1981. (*Id.* ¶ 20.) He filed a second-preference petition for his two daughters on March 8, 2005, and alleges that Defendants have failed to respond to his request to retain the May 7, 1981 priority date for his daughters, derivative beneficiaries of the original petition. (*Id.* ¶ 20.)

In evaluating the standing issue, which bears on typicality in this case, the Court looks to the language of 8 U.S.C. § 1153, upon which this action so heavily depends. The gravamen of this action is that the class has been injured by Defendants' failure to promulgate regulations implementing

§ 203(h)(3) so that a derivative beneficiary who has aged out of a third- or fourth-preference visa petition may automatically convert her status to that of a beneficiary of a second-preference category, and retain the priority date previously accorded to her as the derivative beneficiary of the original petition. Significantly, the second-preference category applies only to the children and unmarried sons and daughters of "permanent resident aliens," such as Plaintiffs. 8 U.S.C. § 1153(a)(2).

It is therefore reasonable to presume that Plaintiffs, as "permanent resident aliens," have standing to assert this entitlement. What is less clear, as Defendants point out, is whether the children of such aliens have standing as derivative beneficiaries. (Opp'n Br. 11, citing 8 C.F.R. § 103.3(a)(iii)(B), and various cases.) [13] Nor is it even clear whether immigrant parents who are not yet "permanent resident aliens" have standing. Moreover, *Wang* suggests that whether an alien obtains permanent residence through family-based visa petitions, employment-based petitions, or diversity immigrant applications may control the underlying legal issue here. *See* 25 I. & N. Dec. at 35 ("[T]he concept of 'retention' of priority dates has always been limited to visa petitions filed by the same family member."). The Court finds Plaintiff's reply brief inadequate to address these concerns and, therefore, is unwilling to certify a *broad* class so long as doubt remains. Also, to the extent that Plaintiffs have the burden to show that their claims and defenses are typical to those of the proposed class, *see Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir.2001), the Court finds that the class is more properly limited to putative class members who, like Plaintiffs, became lawful permanent residents as primary beneficiaries of third- and fourth-preference visa petitions listing their children as derivative beneficiaries, and who subsequently filed second-preference petitions on behalf of their aged-out unmarried sons and daughters, for whom Defendants have not granted automatic conversion or the retention of priority dates pursuant to § 203(h)(3).

#### 4. *Adequacy of Representation*

■ Rule 23(a)(4) requires that the class representatives must "fairly and adequately protect the interests of the class." Fed. R.Civ.P. 23(a)(4). In determining adequacy of class representation, the Court considers (1) whether any conflicts of interest exist between the named plaintiffs and the class members, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); and (2) whether the named plaintiffs' counsel will adequately protect the interests of the class, *Dukes*, 474 F.3d at 1233.

As to the first consideration, because the Court has narrowed the class above, Defendants' arguments that Plaintiffs cannot fairly and adequately protect the interests of the class are no longer applicable. (Oppo.Br.20–24.) The Court finds that Plaintiffs are perfectly capable of representing other "permanent resident alien" parents who filed petitions on behalf of children who subsequently aged-out and for whom Defendants have not granted the automatic conversion and retention of priority dates pursuant to § 203(h)(3). There is nothing to suggest otherwise. *Cf. Cummings v. Connell*, 316 F.3d 886, 896 (9th Cir.2003) ("[T]his circuit does not favor denial of class certification on the basis of speculative conflicts.").

As to the second consideration, Defendants do not dispute that "Plaintiffs' attorneys have litigated numerous cases in the federal courts involving the rights of aliens, and have substantial expertise in handling immigration cases." (Mot. Br. 21, Exs. A & B.) The Court finds that counsel will adequately protect the interests of the class.

Accordingly, the adequacy requirement is satisfied.

*See also Do Vale v. INS*, No. 01–216–ML, 01–507–ML, 2002 WL 1455347, at *5 (D.R.I. June 25, 2002) ("While the denial of the family visa petition may have been prejudicial to Petitioner's wife, it was not prejudicial to the Petitioner [as the beneficiary of a family-based visa petition].").

---

**13.** For example, *Blacher v. Ridge*, 436 F.Supp.2d 602, 606 n. 3 (S.D.N.Y.2006), cites 8 C.F.R. § 103.3(a)(iii)(B), which holds that, in the context of immigration appeals, "the person or entity with legal standing in a proceeding ... does not include the beneficiary of a visa petition."

#### C. *Rule 23(b)(2)*

 Plaintiffs seek certification of a class pursuant to Rule 23(b)(2). A class may be certified under this subsection when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed.R.Civ.P. 23(b)(2). Defendants contend that certification under Rule 23(b)(2) is not warranted where, as here, they have not refused to act on grounds generally applicable to putative class members, but in fact have acted by "certif[ying] this exact issue to the Board" in two cases related to the interpretation of § 203(h)(3). However, the question of whether Defendants have or have not failed to act is uniformly applicable to the class. Moreover, Defendants' argument is misplaced to the extent Plaintiffs challenge "Defendants' failure to promulgate regulations implementing CSPA benefits." (Compl.¶ 4.) On that claim, with respect to § 203(h)(3) in particular, Plaintiffs seeks injunctive and declaratory relief as well as costs and fees, but do not seek compensatory damages. (Compl. at 32–33.)

Accordingly, certification is proper under Rule 23(b)(2).[14]

#### IV. *Conclusion*

For the foregoing reasons, the Court GRANTS Plaintiffs' motion for class certification subject to certain revisions. The class is defined as: "Aliens who became lawful permanent residents as primary beneficiaries of third- and fourth-preference visa petitions listing their children as derivative beneficiaries, and who subsequently filed second-preference petitions on behalf of their aged-out unmarried sons and daughters, for whom Defendants have not granted automatic conversion or the retention of priority dates pursuant to § 203(h)(3)." The Court recognizes that the BIA has weighed in on this matter, but the underlying legal question is still subject to debate. It is not necessary for the Court to resolve the question at this time; for purposes of class certification, it is sufficient that the question is common to the class a whole.

The Court appoints the law firm of Reeves & Associates as lead class counsel.

IT IS SO ORDERED.

---

14. Defendants do not make much of their argument that, "[i]f class litigation were to proceed at this time, the interests of those lawful permanent residents whose sons and daughters would be displaced under Plaintiffs' reading of 8 U.S.C. § 1153(h)(3) must be evaluated to determine if they are necessary parties." (Opp'n Br. 4 n. 4.) This argument presupposes that the Court will confer new rights on Plaintiffs rather than enforce rights which they already had by virtue of congressional action.