Bailun ZHANG, Plaintiff,

v.

Janet NAPOLITANO, Defendant.

Arbi Torossian, et al, Plaintiffs,

v.

David Douglas, et al., Defendants.

Shahab Dowlatshahi, Plaintiff,

v.

Eric Holder, et al., Defendants.

Rosalina Cuellar de Osorio,
et al, Plaintiffs,

v.

Aytes, et al, Defendants.

Nos. SACV 09–93 JVS(SHx), CV 08–6919 JVS(SHx), CV 08–5301 JVS(SHx), EDCV 08–840 JVS(SHx).

United States District Court,
C.D. California.

Oct. 9, 2009.

Justin X. Wang, Trent Goulding, Baughman and Wang, San Francisco, CA, for Plaintiff Zhang.

Amy Carole Prokop, Carl Shusterman Law Offices, Los Angeles, CA, for Plaintiffs Torossian, et al.

Ira Nasserian, Law Offices of Ira J. Nasserian and Associates, Los Angeles, CA, for Plaintiff Dowlatshahi.

Carl Shusterman, Carl Shusterman Law Offices, Los Angeles, CA, for Plaintiffs de Osorio, et al.

Gisela A. Westwater, Aaron D. Nelson, Office of Immigration Litigation, U.S. Dept. of Justice, Washington, DC, Civil Division, Los Angeles, CA, Attorneys for Defendants.

## ORDER RE CROSS–MOTIONS FOR SUMMARY JUDGMENT AND MOTION TO DISMISS *DOWLATSHAHI* ACTION

JAMES V. SELNA, District Judge.

These cases concern the proper interpretation of a provision of the Child Status Protection Act ("CSPA") § 203(h)(3) of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. § 1153(h)(3).

Plaintiffs in these actions are parents, and in some cases their adult children, who under § 203(h)(3) seek to transfer the priority date from family third- and fourth-preference ("F3" and "F4," respectively) visa petitions[1] to family second-preference ("F2B") visa petitions.[2] The F3 and F4 petitions were filed by U.S. citizen relatives on behalf of the parent-Plaintiffs, whereas the F2B petitions were filed by the parent-Plaintiffs on behalf of their adult sons and daughters after the parents became lawful permanent residents of the United States. These sons and daughters, named as derivative beneficiaries of the F3 and F4 petitions, lost eligibility to immigrate as derivative beneficiaries when they turned twenty-one before a visa number became available to their parents. Plaintiffs now seek review of the U.S. Citizenship and Immigration Services's ("USCIS's") determination that the sons and daughters were not eligible to adjust status based on an automatic conversion of the F3 and F4 petitions to F2B petitions and the retention of the original priority date from the former petitions. Plaintiffs seek relief under the Declaratory Judgment Act, 28 U.S.C. § 2201; the All Writs Act, 28 U.S.C. § 1651; the Mandamus Act, 28 U.S.C. § 1361; and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*

Presently before the Court are the parties' cross-motions for summary judgment under Federal Rule of Civil Procedure 56.

## I. *Background*

These cases present a question of first impression for the federal judiciary. Defendants frame the issue as follows:

[W]hether, under [§ 203(h)(3)], aliens who aged-out of their derivative [F3 and] F4 classification[s] may transfer the priority date from [those] petition[s] to a later F2B petition when the petitions [were] filed by different petitioners and after there has been a gap in eligibility for classification under the INA.

(Defs.' Mot. Br. 7–8.) No federal court has addressed this precise issue. But the Board of Immigration Appeals ("BIA") has issued a published decision in *Matter of Wang*, 25 I. & N. Dec. 28, 28 (B.I.A.2009), holding that "[t]he automatic conversion and priority date retention provisions of [§ 203(h)(3)] do not apply to an alien who ages out of eligibility for an immigrant visa as the derivative beneficiary of a fourth-preference visa petition, and on whose behalf a second-preference petition is later filed by a different petitioner." Accordingly, the issue here is whether the Court should give deference to *Wang* under the two-step framework of *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

To make this inquiry, the Court provides background on the statutory provision at issue, the agency interpretation on point, and the factual circumstances of the present cases.

### A. *Section 203(h)(3)*

Over a decade ago, "an enormous backlog of adjustment of status (to permanent residence) applications ... developed at the INS." H.R.Rep. No. 107–45, p. 2 (2001), *as reprinted in* 2002 U.S.C.C.A.N. 640, 641. As a result, child beneficiaries of visa applications often would "age out," or

---

**1.** The F3 and F4 classifications are codified at 8 U.S.C. § 1153(a)(3) and (4), respectively.

**2.** The F2B classification is codified at 8 U.S.C. § 1153(a)(2)(B). This provision relates

to "unmarried sons or unmarried daughters," as opposed to the "children," of lawful permanent residents. In relevant part, a "child" is an unmarried person under age twenty-one. 8 U.S.C. § 1101(b)(1).

turn twenty-one, before the application was processed, thereby requiring the applicant to shift into a lower preference classification and be placed "at the end of a long waiting list for a visa." *Id.* Most notably, "children" at the F2A classification would shift to the F2B classification for "unmarried sons [and] unmarried daughters" upon turning twenty-one. *Compare* 8 U.S.C. § 1153(a)(2)(A), *with id.* § 1153(a)(2)(B). The CSPA was enacted to provide age-out protection for individuals who were children at the time a petition or application for permanent resident status was filed on their behalf. *Padash v. INS,* 358 F.3d 1161, 1167 (9th Cir.2004).

Among other things, the CSPA amended § 203 of the INA by adding what is now subsection (h). Section 203(h) provides that an alien's age for purposes of the F2A classification is to be determined by subtracting the time that the petition for classification was pending from the alien's age at the time that a visa number becomes available. 8 U.S.C. § 1153(h)(1)-(2). If the alien is determined to be twenty-one or older after applying this calculation, the statute provides for the automatic conversion of the petition to the appropriate category and the retention of the original priority date from when the original petition was filed. *Id.* § 1153(h)(3). Specifically, § 203(h)(3) provides:

> If the age of an alien is determined under paragraph (1) to be 21 years of age or older for the purposes of subsections (a)(2)(A) and (d) of this section, the alien's petition shall automatically be converted to the appropriate category and the alien shall retain the original priority date issued upon receipt of the original petition.

8 U.S.C. § 1153(h)(3). This provision, at the heart of the controversy here, was interpreted by the BIA in *Wang.*

## B. *The BIA's decision in Wang*

In *Wang,* a visa number became available to the plaintiff as a beneficiary of an F4 petition filed by his U.S. citizen sister after one of his daughters, a derivative of her father on the original petition, aged out. 25 I. & N. Dec. at 29. The plaintiff then filed an F2B petition for his aged-out daughter. *Id.* at 30. At issue in *Wang* was "whether a derivative beneficiary who has aged out of a fourth-preference visa petition may automatically convert her status to that of a beneficiary of a second-preference category pursuant to [§ 203(h) of the INA]." 25 I. & N. Dec. at 30. In resolving this issue, the BIA squarely addressed the automatic conversion and priority date retention provisions of § 203(h)(3).

The BIA began by observing that the phrases "automatic conversion" and "retention" had recognized meanings in the regulatory and statutory context in which Congress enacted § 203(h)(3). The BIA noted that 8 C.F.R. § 204.2(i) provides for the "automatic conversion" from one preference category to another upon the occurrence of certain events, *id.* at 34 (citing Automatic Conversion of Classification of Beneficiary, 52 Fed.Reg. 33,797 (Sept. 8, 1987)), and that 8 C.F.R. § 204.2(a)(4) provides for "retention" of a priority date for "a lawful permanent resident's son or daughter who was previously eligible as a derivative beneficiary under a second-preference spousal petition filed by that same lawful permanent resident." *Id.* The BIA further observed that the CSPA added § 201(f) to the INA, for which the "conversion" of the original petition from one preference category to another occurs automatically by operation of law. *Id.* at 34–35. Based on these regulatory and statutory provisions, the BIA held that "conversion" means to shift from one visa category to another without the need to file a new

visa petition, and that "retention" of priority dates is limited to visa petitions filed by the same family member. *Id.* The BIA therefore concluded that § 203(h)(3) did not apply to the plaintiff's daughter in *Wang:*

> First, with regard to the "automatic conversion" referenced in section 203(h)(3), we look to see to which category the fourth-preference petition converted at the moment the beneficiary aged out. When the beneficiary aged out from her status as a derivative beneficiary on a fourth-preference petition, *there was no other category to which her visa could convert because no category exists for the niece of a United States citizen.* Second, if we apply the "retention" language of section 203(h) here, we look to see if the new petition was filed on the beneficiary's behalf by the same petitioner. In the beneficiary's case, *the new visa petition has been filed by her father, not by her aunt (who was the original petitioner).*

*Id.* at 35 (emphases added). But the BIA's inquiry did not end there. The BIA also searched the CSPA's legislative history for evidence of a congressional intent to expand the use of the automatic conversion and priority date retention concepts. The BIA found none. Instead, the BIA noted that House reports and related statements from House members revealed "that the drive for the legislation was the then-extensive administrative delays in the processing of visa petitions and applications resulting in the aging out of beneficiaries of petitions filed by United States citizens and the associated loss of child status for immigration purposes." *Id.* at 36–37 (citing the Congressional Record). The BIA also found "repeated discussion in the House ... of the intention to allow for retention of child status 'without displacing others who have been waiting patiently in other visa categories.'" *Id.* at 37 (citing the Congressional Record). Accordingly, the BIA held that the automatic conversion and priority date retention provisions did not apply to an alien who aged out of eligibility for an immigrant visa as the derivative beneficiary of an F4 petition, and on whose behalf an F2B petition was later filed by a different petitioner. *Id.* at 38–39.[3]

### C. *The Facts in These Cases*

The factual circumstances of these cases are similar to those in *Wang.*

Plaintiff Bailun Zhang immigrated to the United States from China in 2008 as the beneficiary of an F4 petition filed by his U.S. citizen sister in 1991. (Zhang Compl. ¶ 4.) His son was a derivative of that petition, but aged out prior to the date that Zhang's visa was issued. (*Id.* ¶ 9.)

Plaintiff Ojik Babomian came to the United States from Iran in 1996, and became a lawful permanent resident as the beneficiary of an F3 petition filed by her U.S. citizen mother in 1998. (Torossian Compl. ¶¶ 26, 30.) Plaintiff Arbi Torossian, her son, aged out before Babomian was eligible to adjust her status to that of lawful permanent resident in 2007. (*Id.* ¶ 31.)

Plaintiff Shahab Dowlatshahi immigrated to the United States as the beneficiary of an F4 petition filed by his U.S. citizen sister in 1993. (Dowlatshahi Compl. at 2.) His daughter was a derivative of that peti-

---

**3.** The BIA's reasoning in *Wang* applies with equal vigor to the automatic conversion and priority date retention from an F3 to an F2B petition. For example, in the case of Torossian below, "there was no other category to which [his] visa could convert because no category exists for the [grandson] of a United States citizen," and "the new visa petition has been filed by [his mother], not by [his grandmother] (who was the original petitioner)." 25 I. & N. Dec. at 35.

tion, but aged out before Dowlatshahi's visa number became available.[4]

Plaintiffs Rosalina Cuellar de Osorio, Elizabeth Magpantay, Evelyn Y. Santos, Maria Eloisa Liwag, and Norma Uy became lawful permanent residents in 2006 and 2007 as the result of visa petitions filed by their U.S. citizen relatives. (de Osorio Compl. ¶ 9–13.) Plaintiff Ruth Uy is Uy's daughter. In the original visa petitions that resulted in the parent-Plaintiffs' current lawful permanent residence, their children were listed as derivative beneficiaries. These children aged out before their parents adjusted status.

The parent-Plaintiffs in these cases filed F2B petitions on behalf of their aged-out children. Plaintiffs filed suit claiming that, under § 203(h)(3), the F2B petitions should be assigned the priority date of the earlier F3 and F4 petitions filed by their U.S. citizen relatives.

With this background, the Court now considers the parties' cross-motions for summary judgment.

## II. *Legal Standard*

Summary judgment is appropriate where the record, read in the light most favorable to the nonmoving party, indicates that "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *accord Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The initial burden is on the moving party to demonstrate an absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. Material facts are those necessary to the proof or defense of a claim, and are determined by reference to substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91

L.Ed.2d 202. 248 (1986). A fact issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. 2505. If the moving party meets its burden, then the nonmoving party must produce enough evidence to rebut the moving party's claim and create a genuine issue of material fact. *Id.* at 322–23, 106 S.Ct. 2505. If the nonmoving party meets this burden, then the motion will be denied. *Nissan Fire & Marine Ins. Co. v. Fritz Co., Inc.,* 210 F.3d 1099, 1103 (9th Cir.2000).

■ Where the parties have made cross-motions for summary judgment, the Court must consider each motion on its own merits. *Fair Hous. Council v. Riverside Two,* 249 F.3d 1132, 1136 (9th Cir. 2001). The Court will consider each party's evidentiary showing, regardless of which motion the evidence was tendered under. *See id.* at 1137.

## III. *Discussion*

There are no factual disputes here. Thus, the only issue is whether the USCIS's decision not to apply § 203(h)(3)'s automatic conversion and priority date retention provisions in these cases runs afoul of the "arbitrary and capricious" standard of the APA.

■ Under the APA, a final agency action can be set aside only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). A decision is arbitrary and capricious if the agency "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs

---

4. Dowlatshahi has moved to dismiss his case in light of the Court's class certification in a related case. (Docket No. 50.) Defendants do not oppose. (Docket No. 53.) The Court addresses this motion separately in Section III.C below.

counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983); *accord George v. Bay Area Rapid Transit,* 577 F.3d 1005, 1010 (9th Cir.2009).

■■■ The party challenging an agency's action as arbitrary and capricious bears the burden of proof. "'Indeed, even assuming the [agency] made missteps … the burden is on petitioners to demonstrate that the [agency's] ultimate conclusions are unreasonable.'" *George,* 577 F.3d at 1011 (alterations and ellipses in original) (quoting *City of Olmsted Falls, Ohio v. FAA,* 292 F.3d 261, 271 (D.C.Cir.2002)). Even when an agency explains its decision with less than ideal clarity, a reviewing court will not upset the decision on that account "if the agency's path may reasonably be discerned." *Alaska Dep't of Envtl. Conservation v. EPA,* 540 U.S. 461, 497, 124 S.Ct. 983, 157 L.Ed.2d 967 (2004). Accordingly, review under the arbitrary and capricious standard is narrow, and the reviewing court may not substitute its judgment for that of the agency. *Marsh v. Oregon Natural Res. Council,* 490 U.S. 360, 376, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989); *accord United States v. Snoring Relief Labs Inc.,* 210 F.3d 1081, 1085 (9th Cir.2000).

Here, the Court finds that Plaintiffs have not carried their burden to show that the USCIS's action in these cases was arbitrary and capricious, and agrees with Defendants that the BIA's decision in *Wang* is entitled to *Chevron* deference.

### A. The Chevron Standard

*Wang* is dispositive of this motion. The Plaintiffs fail to carry their burden on these cross-motions because, at bottom, they cannot show that *Wang* is not entitled to *Chevron* deference.

■■■ The U.S. Attorney General has vested the BIA with power to exercise its "independent judgment and discretion in considering and determining cases coming before [it]." 8 C.F.R. § 1003.1(d)(1). The Supreme Court has therefore recognized "that the BIA should be accorded *Chevron* deference as it gives ambiguous statutory terms 'concrete meaning through a process of case-by-case adjudication.'" *INS v. Aguirre–Aguirre,* 526 U.S. 415, 425, 119 S.Ct. 1439, 143 L.Ed.2d 590 (1999) (citing *INS v. Cardoza–Fonseca,* 480 U.S. 421, 448–49, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987)). *Chevron* established a familiar two-step framework for deciding whether an agency's interpretation of a statute is proper. At the first step, the Court asks whether the statute's plain terms "directly address[ ] the precise question at issue." 467 U.S. at 843, 104 S.Ct. 2778. If the statute is ambiguous on the point, the Court defers at step two to the agency's interpretation 50 long as the construction is "a reasonable policy choice for the agency to make." *Id.* at 845, 104 S.Ct. 2778.

### B. Application of Chevron

Here, Defendants' interpretation is permissible at both steps.

#### 1. Section 203(h)(3) Is Ambiguous

■■■ The Court finds that § 203(h)(3) is ambiguous at *Chevron* step one, and endorses the explanation of this ambiguity articulated in *Wang* itself:

> If the beneficiary is determined to be 21 years of age or older pursuant to section 203(h)(1) of the Act, then section 203(h)(3) provides that "the alien's petition shall automatically be converted to the appropriate category and the alien shall retain the original priority date issued upon receipt of the original peti-

tion." Unlike sections 203(h)(1) and (2), which when read in tandem clearly define the universe of petitions that qualify for the "delayed processing formula," *the language of section 203(h)(3) does not expressly state which petitions qualify for automatic conversion and retention of priority dates.*

25 I. & N. Dec. at 33 (emphasis added). There is nothing on the face of the statute to support Plaintiffs' contention that this ambiguity arises only "by focusing on the wrong familial relationship as well as the wrong point in time." (Torossian Pls.' Opp'n Br. 3–4.) This contention is further belied by its reliance on the BIA's unpublished decision in *Matter of Garcia*, A79 001 587, 2006 WL 2183654 (B.I.A. June 16, 2006). That the BIA interpreted § 203(h)(3) differently on another occasion does not prove that the provision is "plain and unambiguous." (Torossian Pls.' Opp'n Br. 2.) Indeed, it suggests the opposite. In any event, only the BIA's published decisions have precedential value. *See* 8 C.F.R. § 1003.1(g).

The Court need not belabor this point. Suffice it to say that Plaintiffs effectively concede the issue in their opposition briefs. According to Plaintiffs, when a hypothetical derivative beneficiary ages out of an F3 or F4 petition, "he automatically converts to the appropriate category (as determined by his relationship to the direct beneficiary[) ]." (Pls.' Opp'n Br. 8.) That Plaintiffs must add an explanatory parenthetical underscores the ambiguity surrounding the interpretation of § 203(h)(3).

2. *Wang's Interpretation of § 203(h)(3) Is Reasonable*

■ The Court also concludes that the BIA's interpretation of § 203(h)(3) in *Wang* was "a reasonable policy choice for the [BIA] to make" at *Chevron* step two. 467 U.S. at 845, 104 S.Ct. 2778.

The BIA in *Wang* declined to apply the automatic conversion and priority date re-

tention provisions of § 203(h)(3) "[a]bsent clear legislative intent to create an open-ended grandfathering of priority dates that allow derivative beneficiaries to retain an earlier priority date set in the context of a different relationship, to be used at any time." *Id.* at 39. The BIA began by noting that the provision does not expressly state which petitions qualify for automatic conversion and priority date retention. *Id.* at 33. The BIA then found that the regulatory and statutory context, as well as the legislative record, supported a narrower interpretation of § 203(h)(3). *Id.* at 34–39. The BIA concluded that the automatic conversion and priority date retention provisions did not apply to an alien who aged out of eligibility for an immigrant visa as the derivative beneficiary of a fourth-preference visa petition, and on whose behalf a second-preference petition was later filed by a different petitioner. *Id.* at 38–39. Hence, the BIA's interpretation in Wang finds ample regulatory and statutory support, and is buttressed by the Congressional Record. As such, it is reasonable.

Plaintiffs' arguments to the contrary are unavailing.

Plaintiffs contend that the CSPA was intended to protect those "who turned twenty-one and subsequently lost their eligibility for immigration benefits." (Torossian Pls. Opp'n Br. 6.) But they neglect to point out that Congress was also concerned with not "displacing others who have been waiting patiently in other visa categories." 25 I. & N. Dec. at 37 (citing the Congressional Record). In any event, the adult sons and daughters here faced no administrative delay per se, but rather a high demand for a limited number of visas. This accords with the BIA's observation in *Wang* that, "[w]hile the CSPA was enacted to alleviate the consequences of administrative delays, there is no clear evidence

that it was intended to address delays resulting from visa allocation issues, such as the long wait associated with priority dates." *Id.* at 38.

Plaintiffs also assert that the BIA's interpretation renders the words "and (d)" superfluous within the text of § 203(h)(3). But beneficiaries of petitions filed under subsection (d) include derivative beneficiaries of F2A petitions. Given the BIA's reliance on a perceived intent of Congress not to expand the protection of he act, the Court cannot say that an interpretation of the reference to subsection (d) which restricts subsection (d) to beneficiaries of derivative F2A petitions is unreasonable. At a minimum there is an ambiguity, and it is the BIA's duty to resolve it.

Plaintiffs further contend that the BIA failed to discuss various regulatory and statutory provisions. But none of Plaintiffs' cited examples weigh heavily because none use the terms "conversion" and "retention" in conjunction. (Torossian Pls.' Opp'n Br. 16–18, citing 8 C.F.R. § 204.2(h)(2); 8 C.F.R. § 204.5(e); 8 C.F.R. § 204.12(f)(1); USA Patriot Act of 2001, Pub.L. No. 107–56, § 421(c) 423, 115 Stat. 272; Western Hemisphere Savings Clause, P.L. 94–571, 90 Stat. 2703 (October 20, 1976).)

Finally, Plaintiffs cite *Baruelo v. Comfort,* No. 05 C 6659, 2006 WL 3883311 (N.D.Ill. Dec. 29, 2006), for the proposition that adult sons and daughters should not have to go to the back of another line to wait for visa numbers to become available. But *Baruelo* is inapposite. There, the plaintiff was a primary beneficiary of an F2A petition filed by her mother, a lawful permanent resident. *Id.* at *1. The petition was approved but administrative delays prevented the plaintiff from obtaining her visa until after she had aged out into the F2B preference classification. The plaintiff in *Baruelo* is precisely the class of alien that the BIA determined to be eligible for automatic conversion and priority date retention under § 203(h)(3). Thus, the holding in *Baruelo* comports with the BIA's decision in *Wang.*

Accordingly, *Wang* is entitled to *Chevron* deference, and Defendants did not act arbitrarily or capriciously in refusing to apply § 203(h)(3) to the adult sons and daughters in these cases.

## C. *Dowlatshahi's Motion*

As a final matter, Plaintiff Shahab Dowlatshahi has filed a motion to dismiss his case. (Docket No. 50.) The motion is based on Dowlatshahi's asserted membership in a class certified under Rule 23(b)(2) by this Court in *Costelo v. Chertoff,* 258 F.R.D. 600 (C.D.Cal.2009):

> Aliens who became lawful permanent residents as primary beneficiaries of third- and fourth-preference visa petitions listing their children as derivative beneficiaries, and who subsequently filed second-preference petitions on behalf of their aged-out unmarried sons and daughters, for whom Defendants have not granted automatic conversion or the retention of priority dates pursuant to § 203(h)(3).

*Id.* at 609. Dowlatshahi "believes that [Rule] 23(b)(2) renders his membership in the class created by *Costelo* as mandatory and therefore moves to dismiss his independent action." (Docket No. 50, at 7.) The Court entertains the motion despite its noncompliance with the Local Rules. (Docket No. 51.) To be sure, although the class in *Costelo* is mandatory in that class members do not have an automatic right to notice or a right to opt out of the class, *see Reeb v. Ohio Dep't of Rehab. and Corr.,* 435 F.3d 639, 645–46 (6th Cir.2006), the "mandatory" nature of the class does not necessarily preclude Dowlatshahi's separate suit. The Court nonetheless grants the motion in accordance with Dowlatshahi

wishes and in view of Defendant's non-opposition. (Docket No. 53.)

IV. *Conclusion*

For the foregoing reasons, the Court DISMISSES *Dowlatshahi v. Holder, et al.*, CV 08–5301 JVS (SHx). The Court DENIES the Plaintiffs' motions and GRANTS Defendants' motions in the remaining cases. The Court cannot compel Defendants to act where their inaction was not arbitrary, capricious, or an abuse of discretion. 5 U.S.C. § 706(2)(A).

IT IS SO ORDERED.