# Matter of Xiuyi WANG, Beneficiary of visa petition filed by Zhuomin Wang, Petitioner

File A088 484 947 - California Service Center

*Decided June 16, 2009*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

The automatic conversion and priority date retention provisions of the Child Status Protection Act, Pub L. No. 107-208, 116 Stat. 927 (2002), do not apply to an alien who ages out of eligibility for an immigrant visa as the derivative beneficiary of a fourth-preference visa petition, and on whose behalf a second-preference petition is later filed by a different petitioner.

FOR RESPONDENT: Scott Bratton, Esquire, Cleveland, Ohio

AMICI CURIAE:[1]  Robert L. Reeves, Esquire; Nancy Miller, Esquire; and Jeremiah Johnson, Esquire, Pasadena, California

FOR THE DEPARTMENT OF HOMELAND SECURITY: Jason R. Grimm, Service Center Counsel

BEFORE: Board Panel: NEAL, Acting Chairman; ADKINS-BLANCH, Board Member; and MANN, Temporary Board Member.

MANN, Temporary Board Member:

In a decision dated March 25, 2008, the director of the California Service Center approved a visa petition filed by the lawful permanent resident petitioner on behalf of the beneficiary as his unmarried daughter. Although the director approved the visa petition, she denied the petitioner's request to assign an earlier priority date to the visa petition. Specifically, the director accorded the visa petition a priority date of September 5, 2006, which is the date the visa petition was filed. However, the petitioner sought an earlier priority date of December 28, 1992, the date that a previous visa petition had been filed on the petitioner's behalf by his sister, of which his daughter was a derivative

---

[1] We acknowledge with appreciation the helpful briefs submitted by both parties and by amici curiae.

beneficiary. In view of the important questions raised regarding which priority date to assign to a visa petition, the director certified her decision to the Board for review. The director's decision will be affirmed. The request for oral argument is denied.

## I. FACTUAL AND PROCEDURAL HISTORY

### A. 1992 Visa Petition

The petitioner is a native and citizen of China. On December 28, 1992, his United States citizen sister filed a Petition for Alien Relative (Form I-130) on his behalf pursuant to section 203(a)(4) of the Immigration and Nationality Act, 8 U.S.C. § 1153(a)(4) (Supp. IV 1992). That visa petition was approved 2 months later on February 24, 1993, and was accorded a priority date of December 28, 1992. The petitioner was the primary beneficiary of that fourth-preference visa petition (hereinafter referred to as the "1992 visa petition"), and his wife and three children were listed as derivative beneficiaries. The beneficiary of the instant visa petition is his daughter, who was born on November 6, 1982, and was 10 years old when the 1992 petition was filed.

In February 2005 visas became available for nationals of China who were beneficiaries of fourth-preference petitions with a priority date in 1992. *See* Department of State Visa Bulletin, Vol. III, No. 78 (Feb. 2005). Accordingly, the petitioner was admitted to the United States as a lawful permanent resident on October 3, 2005. By this time, however, the beneficiary was 22 years of age and no longer qualified as a "child" who could derive beneficiary status from the petition filed by her aunt on behalf of her father. *See* sections 101(b)(1), 203(d) of the Act, 8 U.S.C. §§ 1101(b), 1153(d) (2006).

### B. 2006 Visa Petition

On September 5, 2006, the petitioner filed a second-preference visa petition on behalf of the beneficiary as his unmarried daughter pursuant to section 203(a)(2) of the Act (hereinafter referred to as the "2006 visa petition"). In a cover letter sent with the visa petition, the petitioner requested that the beneficiary be assigned a priority date of December 28, 1992, which was the priority date given to the fourth-preference visa petition that had been filed on his behalf by his sister.

The director approved the second-preference visa petition on March 25, 2008, but she gave it a priority date of September 5, 2006, which is the date the visa petition was filed. In her decision, the director noted that

8 C.F.R. § 204.2(a)(4) (2008) allows for retention of a priority date solely with regard to derivative beneficiaries of a second-preference visa petition, not to derivative beneficiaries of a fourth-preference visa petition. As the 1992 visa petition was a fourth-preference petition, the director concluded that the second-preference petition filed by the petitioner in 2006 could not retain the more favorable priority date of the 1992 visa petition.

The director acknowledged the petitioner's argument that the beneficiary should be accorded the earlier priority date pursuant to the Child Status Protection Act, Pub. L. No. 107-208, 116 Stat. 927 (2002) ("CSPA"). However, she concluded that the CSPA did not apply to this case. In the absence of published precedent on the applicability of the CSPA in this situation, the director elected to certify her decision to the Board.

## II.  ISSUE

The issue in this case is whether a derivative beneficiary who has aged out of a fourth-preference visa petition may automatically convert her status to that of a beneficiary of a second-preference category pursuant to section 203(h) of the Act.  To answer this question, we must examine whether the CSPA intended for the beneficiary of a second-preference visa petition filed by her father to retain the priority date previously accorded to her as the derivative beneficiary of a fourth-preference visa petition filed by her aunt.

## III.  CHILD STATUS PROTECTION ACT

### A.  Who May Qualify as a "Child"?

Section 203(h) of the Act was amended by section 3 of the Child Status Protection Act, 116 Stat. at 928, in part to define who may qualify as a "child" and in part to address the "[t]reatment of certain unmarried sons and daughters seeking" immigrant status in the United States.  Section 203(h) provides in pertinent part:

> Rules for Determining Whether Certain Aliens Are Children
> (1) In general
> For purposes of subsections (a)(2)(A)[2] and (d),[3] a determination of whether an alien satisfies the age requirement in the matter preceding subparagraph (A)

---

[2] This provision relates to the spouses or children of lawful permanent residents.

[3] This provision relates to a spouse or child, if accompanying to join the spouse or parent.

of section 101(b)(1)[4] shall be made using—
>    (A) the age of the alien on the date on which an immigrant visa number becomes available for such alien (or, in the case of subsection (d), the date on which an immigrant visa number became available for the alien's parent), but only if the alien has sought to acquire the status of an alien lawfully admitted for permanent residence within one year of such availability; reduced by
>    (B) the number of days in the period during which the applicable petition described in paragraph (2) was pending.
> (2) Petitions described
> The petition described in this paragraph is—
>    (A) with respect to a relationship described in subsection (a)(2)(A), a petition filed under section 204 for classification of an alien child under subsection (a)(2)(A); or
>    (B) with respect to an alien child who is a derivative beneficiary under subsection (d), a petition filed under section 204 for classification of the alien's parent under subsection (a), (b), or (c).[5]
> (3) Retention of priority date
> If the age of an alien is determined under paragraph (1) to be 21 years of age or older for the purposes of subsections (a)(2)(A) and (d), the alien's petition shall automatically be converted to the appropriate category and the alien shall retain the original priority date issued upon receipt of the original petition.

The CSPA was essentially enacted to provide relief to children who might "age out" of their beneficiary status because of administrative delays in visa processing or adjustment application adjudication. A "child" is defined for immigration purposes as an unmarried individual under the age of 21. Section 101(b)(1) of the Act. In certain visa categories, qualifying as a "child" has a definite advantage. For example, the child of a United States citizen is characterized as an "immediate relative," a category that is not subject to any statutory limit on the number of visas available each year. Thus, the "child" of a United States citizen does not need to wait for a priority date to become current, because a visa will be immediately available for a beneficiary in that category. Section 201(b)(2)(A)(i) of the Act, 8 U.S.C. § 1151(b)(2)(A)(i) (2006). However, should the child of a United States citizen reach the age of 21 before immigrating to the United States, he or she is then classified as a "son" or "daughter" of a United States citizen and falls within the purview of the first-preference category, which is subject to numerical limits and the attendant wait for a visa to become available. *See* section 203 of the Act (establishing the percentage of visas that may be allocated for various relative classifications). To illustrate, had this beneficiary been a child

---

[4] This matter notes that the term "child" means an unmarried person under 21.

[5] Section 203(a) refers to familial visas, (b) refers to employment based visas, and (c) refers to diversity visas.

of a United States citizen today, she could immediately seek to immigrate as an immediate relative. However, as a Chinese national who is the unmarried daughter of a lawful permanent resident, she falls within the second-preference category, which is several years from being current.[6]

To protect a child's status from being lost on account of administrative processing delays, section 203(h)(1) of the Act provides a formula for determining whether a son or a daughter who, as in this case, is the derivative beneficiary of a visa petition may still qualify as a "child" when the parent's petition becomes current. The formula subtracts the amount of time it took Department of Homeland Security's United States Citizenship and Immigration Services ("USCIS") to adjudicate the visa petition (that is, the number of days from the date the visa petition was filed to the date the visa petition was approved) from the age of the derivative beneficiary on the date the visa petition became available. If the age of the derivative beneficiary as so calculated is under 21, then she may still be considered a "child," and she may be eligible to adjust her status or immigrate to the United States based on a visa petition filed on behalf of her parent.

The parties in this case agree that the beneficiary could not be considered a "child" under section 203(h)(1) of the Act, because at the time the 1992 visa petition became current, she was not under 21, even subtracting the number of days that the visa petition was pending approval, which was less than 2 months' time. The beneficiary had already aged out when the 1992 visa petition became current, and she was thus not eligible to immigrate with her father in 2005.

## B. "One-Year" Bar

The issue then turns on whether the petitioner may use section 203(h)(3) of the Act to convert the priority date from his sister's fourth-preference visa petition to an unrelated second-preference visa petition for his daughter. As noted above, section 203(h)(1) provides a calculation that determines the age of an alien on the date an immigrant visa number becomes available, "but only if the alien has sought to acquire the status of an alien lawfully admitted for permanent residence within one year of such availability." Section 203(h)(1)(A) of the Act.

As an initial matter, the USCIS argues that the beneficiary may not take advantage of the age calculation provision in section 203(h)(1) of the Act to utilize the priority date retention provision in section 203(h)(3), because she

---

[6] The most recent priority date for this nationality and category is February 1, 2001. Department of State Visa Bulletin, Vol. IX, No. 9 (June 2009).

admittedly did not file an application for lawful permanent resident status within 1 year of visa availability. Conversely, the petitioner asserts that the requirement in section 203(h)(1) that an alien must seek permanent resident status within 1 year of the visa's availability is inapplicable to his daughter. According to the petitioner, sections 203(h)(1) and (3) of the Act are distinct from each other and provide different benefits.[7]

The record before us contains no evidence that the beneficiary sought to acquire lawful permanent resident status under the 1992 visa petition within a year of the visa petition becoming available, that is, by February 2006. However, we need not address the question whether this bars the beneficiary from using the terms of section 203(h)(3) of the Act, as we have alternatively examined whether section 203(h)(3) permits an automatic conversion from a fourth-preference visa petition to a second-preference visa petition with retention of the priority date of the fourth-preference petition, and we resolve the matter on that basis.

## IV. AUTOMATIC CONVERSION AND PRIORITY DATE RETENTION UNDER SECTION 203(h)(3) OF THE ACT

### A. Statutory language

If the beneficiary is determined to be 21 years of age or older pursuant to section 203(h)(1) of the Act, then section 203(h)(3) provides that "the alien's petition shall automatically be converted to the appropriate category and the alien shall retain the original priority date issued upon receipt of the original petition." Unlike sections 203(h)(1) and (2), which when read in tandem clearly define the universe of petitions that qualify for the "delayed processing formula," the language of section 203(h)(3) does not expressly state which petitions qualify for automatic conversion and retention of priority dates. Given this ambiguity, we must look to the legislative intent behind section 203(h)(3).

---

[7] The petitioner cites our unpublished decision in *Matter of Garcia*, A79 001 587 (BIA June 16, 2006), 2006 WL 2183654, in which we found that section 203(h)(3) allowed the alien to use the priority date granted to her as a derivative beneficiary of her mother's visa petition. As a rule, unpublished decisions are not authority, and we are not bound by them. *Matter of Arthur*, 20 I&N Dec. 475 (BIA 1992), *modified on other grounds*, *Matter of Velarde*, 23 I&N Dec. 253 (BIA 2002); *Matter of Medrano*, 20 I&N Dec. 216 (BIA 1990, 1991). Nevertheless, we observe that the decision in *Garcia* discussed neither the requirement that an alien must seek to acquire lawful permanent resident status within 1 year of visa availability nor the legislative framework of the statute. We therefore decline to adopt the reasoning in *Garcia*. *See* 8 C.F.R. § 1003.1(g) (2009).

The petitioner urges a broad interpretation of section 203(h), contending that section 203(h)(3) is available to all derivative beneficiaries of any visa petition classification. The brief offered by amici curiae similarly maintains that section 203(h) of the Act is ameliorative and inclusive and does not limit its automatic conversion and priority date retention provisions to family-based preference petitions. In contrast, the USCIS urges a much narrower interpretation of the CSPA, arguing that section 203(h)(3) mirrors the language of 8 C.F.R. § 204.2(a)(4) and essentially codifies "established regulatory practice," which requires that the original priority date will be retained only if the second visa petition is filed by the same petitioner. Thus, the USCIS maintains that in order to effect an "automatic conversion" under the CSPA, the petitioner also must have been the petitioner on the 1992 visa petition. According to the USCIS, such an interpretation of the statute avoids open-ended petitions with no timeliness considerations. We begin with an examination of the regulatory and statutory context in which Congress enacted the automatic conversion and priority date retention provisions of section 203(h)(3).

### B. Use of Visa Petition Conversion and Priority Date Retention Language

In immigration regulations, the phrase "automatic conversion" has a recognized meaning. For example, the relevant provisions of 8 C.F.R. § 204.2(i), which have been in effect since 1987, provide for the "automatic conversion of preference classification" from one preference category to another upon the occurrence of certain events. *See* Automatic Conversion of Classification of Beneficiary, 52 Fed. Reg. 33,797 (Sept. 8, 1987), 1987 WL 140984. Such events include changes in the beneficiary's marital status or the naturalization of the petitioner. Thus, a second-preference petition filed on behalf of the son or daughter of a petitioner who naturalizes would automatically convert to a first-preference petition, and the newly converted petition would retain the original priority date.

Similarly, at the time Congress enacted the CSPA, the regulations at 8 C.F.R. § 204.2(a)(4) provided for "retention" of a priority date for an aged-out child who was accompanying or following to join a principal beneficiary on a second-preference spousal petition. Under 8 C.F.R. § 204.2(a)(4), if a child ages out prior to the issuance of a visa to the principal beneficiary, a separate petition for that son or daughter is then required, but the original priority date is retained if the subsequent petition is filed by the same petitioner. In other words, the retention provision of 8 C.F.R. § 204.2(a)(4) is limited to a lawful permanent resident's son or daughter who was previously eligible

as a derivative beneficiary under a second-preference spousal petition filed by that same lawful permanent resident.

In another context, the CSPA added section 201(f) to the Act, which sets forth rules for determining whether certain aliens qualify as immediate relatives. That section treated the terms "automatic conversion" and "retention" consistently with the existing regulatory schema.[8] Section 201(f) expressly authorizes automatic conversions of petitions upon the naturalization of an alien's parent or the termination of a beneficiary's marriage. In such situations, neither the beneficiary nor an immigration officer need take any action to effect the conversion to the new preference category, because the "conversion" of the originally filed petition based on one preference category to another preference category occurs automatically by operation of law.[9]

As illustrated above, the term "conversion" has consistently been used to mean that a visa petition converts from one visa category to another, and the beneficiary of that petition then falls within a new classification without the need to file a new visa petition. Similarly, the concept of "retention" of priority dates has always been limited to visa petitions filed by the same family member. A visa petition filed by another family member receives its own priority date. We therefore presume that Congress enacted the language in section 203(h)(3) with an understanding of the past usage of these regulatory terms. *See Matter of Monreal*, 23 I&N Dec. 56 (BIA 2001); *Matter of Devison*, 22 I&N Dec. 1362 (BIA 2000, 2001).

With this understanding of how the automatic conversion and priority date retention processes have operated historically, we turn to this case to determine how section 203(h)(3) would apply to the beneficiary. First, with regard to the "automatic conversion" referenced in section 203(h)(3), we look to see to which category the fourth-preference petition converted at the moment the beneficiary aged out. When the beneficiary aged out from her status as a derivative beneficiary on a fourth-preference petition, there was no other category to which her visa could convert because no category exists for the

---

[8] In fact, section 2 of the CSPA, 116 Stat. at 927-28, which added section 201(f) to the Act, specifically referenced the preexisting regulatory automatic conversion provisions of 8 C.F.R. §§ 204.2(i)(1) and (3).

[9] By way of further example, section 6 of the CSPA, 116 Stat. at 929, added section 204(k) to the Act to create a new automatic conversion category, wherein a petition filed on behalf of an unmarried son or daughter of a lawful permanent resident who subsequently naturalizes will automatically convert to a petition to classify the alien as the son or daughter of a United States citizen. The "automatic" nature of this transaction is emphasized by the need for aliens to affirmatively opt out of the conversion if they do not wish to move into the new preference category (for example, should the new category provide a less advantageous priority date). *See* section 204(k)(2) of the Act.

niece of a United States citizen. Second, if we apply the "retention" language of section 203(h) here, we look to see if the new petition was filed on the beneficiary's behalf by the same petitioner. In the beneficiary's case, the new visa petition has been filed by her father, not by her aunt (who was the original petitioner). As noted above, her aunt is not eligible to file a new petition for her because no category exists for the niece of a United States citizen under our existing visa preference classification system.

The petitioner disregards the context explained above and instead maintains that the CSPA is intended as an ameliorative provision to keep families together and that the beneficiary in one visa preference category should be able to retain the priority date for all derivative beneficiaries who may age out. His argument suggests that any time a son or daughter who is a derivative beneficiary of a visa petition filed on behalf of the parent alien is calculated to be 21 years of age or older pursuant to section 203(h)(1)of the Act, that derivative visa petition automatically converts to a new visa petition that may be filed in the future when the alien parent becomes eligible to file the new visa petition. Thus, by this argument, as long as a parent gains status under any preference category, all children who were derivative beneficiaries would gain favorable priority date status, even with regard to a new visa petition that is wholly independent of the original petition and that may be filed without any time limitation in the future. In other words, a derivative beneficiary would never age out or lose a previous priority date. However, we find no clear indication in the statute that Congress intended to expand the historical categories eligible for automatic conversion and priority date retention in such a fashion. We therefore search the legislative history of the CSPA for evidence of a clear intent by Congress to expand the use of the concepts of automatic conversion and priority date retention, as advocated by the petitioner.

### C.  Legislative History

In the House Report accompanying H.R. 1209, 107th Cong. (2001), initially entitled the "Child Status Protection Act of 2001," the Committee on the Judiciary identified the purpose of the bill as modifying

> provisions of the Immigration and Nationality Act determining whether an alien is considered a child and eligible for permanent resident status as an immediate relative of a U.S. citizen, principally by providing that the alien's status as a child is determined as of the date on which the petition to classify the alien as an immediate relative is filed.

H.R. Rep. No. 107-45, at 1-2 (2001), *reprinted in* 2002 U.S.C.C.A.N. 640, 640, 2001 WL 406244, at *1-2. Both the report and associated statements from

several members of the House of Representatives emphasize that the drive for the legislation was the then-extensive administrative delays in the processing of visa petitions and applications resulting in the aging out of beneficiaries of petitions filed by United States citizens and the associated loss of child status for immigration purposes. *Id.* at 2, *reprinted in* 2002 U.S.C.C.A.N. 640, 641, 2001 WL 406244, at \*2; *see also* 147 Cong. Rec. H2901 (daily ed. June 6, 2001) (statements of Reps. Sensenbrenner, Jackson-Lee, and Smith), 2001 WL 617985.

The legislature subsequently reported changes to the proposed CSPA, regarding retention of child status for immediate relatives and adding section 203(h) of the Act in its current form. CSPA, § 3, 116 Stat. at 928. A report on the activities of the Committee on the Judiciary summarized the CSPA, noting that the statute applied when a child of a United States citizen ages out, when lawful permanent resident parents naturalize after petitioning for their sons and daughters, and when United States citizen parents petition for their married sons and daughters whose marriages are later terminated, and it applied as well to children of lawful permanent residents, family- and employer-sponsored immigrants, and diversity lottery winners. H.R. Rep. No. 107-807 (2003), 2003 WL 131168, at \*55-56.

While the legislative record contains generalized references to the Senate amendment regarding children of family- and employment-based visas and diversity visas, there is little discussion explaining the nature of those changes. However, the Chairman of the Committee on the Judiciary did note, in referencing those amendments, that the Senate bill addresses other situations where alien children lose immigration benefits by aging out as a result of processing delays. He noted the same included children of lawful permanent residents, family- and employer-sponsored immigrants, diversity lottery winners, and asylees and refugees. 148 Cong. Rec. H4989 (daily ed. July 22, 2002) (statement of Rep. Sensenbrenner), 2002 WL 1610632, at \*H4990-91; *see also* H.R. Rep. 107-807, 2003 WL 131168, at \*55-56.

There was repeated discussion in the House, both before and after the Senate amendment, of the intention to allow for retention of child status "without displacing others who have been waiting patiently in other visa categories." 148 Cong. Rec. H4989 (statement of Rep. Jackson-Lee), 2002 WL 1610632, at \*H4992; 147 Cong. Rec. H2901, 2001 WL 617985, at \*H2902.[10]

---

[10] Representative Sheila Jackson-Lee reported that the bill contained newly added compromise language to reflect the legislature's desire that the bill not displace others already awaiting visas in other preference categories. Indeed, it was expected that this legislation would open up more immigrant visas in the preference categories because more

(continued...)

The historical record regarding the CSPA contains nothing that is contrary to, or reflects any disagreement with, the noted intent of legislators to have the CSPA address the issue of children aging out of visa availability as a result of administrative processing delays, without cutting in line ahead of others awaiting visas in other preference categories. While the CSPA was enacted to alleviate the consequences of administrative delays, there is no clear evidence that it was intended to address delays resulting from visa allocation issues, such as the long wait associated with priority dates. If we interpret section 203(h) as the petitioner advocates, the beneficiary, as a new entrant in the second-preference visa category line, would displace other aliens who have already been in that line for years before her. Although her visa petition was filed in 2006, the beneficiary would "jump" to the front of the line by retaining a 1992 priority date, thereby causing all the individuals behind her to fall further behind in the queue.[11]

We recognize the petitioner's concern that the length of the visa queue in certain categories can result in children aging out of visa eligibility and losing the opportunity to immigrate with other family members. However, this delay is not a consequence of administrative delays by the Government. Rather, it is the result of a high demand for a finite number of visas. We find that while the legislative record demonstrates a clear concern on the part of Congress to ameliorate the delays associated with the processing of visa petitions, there is no indication in the statutory language or legislative history of the CSPA that Congress intended to create a mechanism to avoid the natural consequence of a child aging out of a visa category because of the length of the visa line. We find no indication in the legislative record that Congress was attempting to expand on the historical application of automatic conversion and retention of priority dates for visa petitions, and we therefore decline to read such an expansion into the statute.

---

(...continued)

individuals would be eligible for visas as immediate relatives and fewer would be shifted to the limited, family-based preference categories. 147 Cong. Rec. H2901 (statement of Rep. Jackson-Lee), 2001 WL 617985, at *H2902.

[11] The petitioner's argument is rather similar in nature to one seeking to "grandfather" a priority date. However, Congress did not write the statute in such a manner, although it clearly has the capability of doing so. *See* section 245(i) of the Act, 8 U.S.C. § 1255(i) (2006).

## V.  CONCLUSION

When the beneficiary turned 21 years of age before the fourth-preference visa petition became current, she no longer qualified as a "child" under section 203(h)(1) of the Act.  Further, the automatic conversion and priority date retention provisions of section 203(h)(3) do not apply to the beneficiary, as those concepts are used historically in Federal regulations and codified elsewhere in the CSPA.  First, there was no available category to which the beneficiary's petition could convert because no category exists for the niece of a United States citizen.  Moreover, the second-preference petition filed on behalf of the beneficiary cannot retain the priority date from the fourth-preference petition filed by her aunt because the second-petition has been filed by her father, a new petitioner.

Absent clear legislative intent to create an open-ended grandfathering of priority dates that allow derivative beneficiaries to retain an earlier priority date set in the context of a different relationship, to be used at any time, which we do not find in the history of the CSPA, we decline to apply the automatic conversion and priority date retention provisions of section 203(h) beyond their current bounds.  Accordingly, we will affirm the decision of the director that the priority date to be assigned to the petitioner's visa petition on behalf of his daughter is September 5, 2006, the date the visa petition was filed.

**ORDER:**  The decision of the director is affirmed.