**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ROSALINA CUELLAR DE OSORIO;
ELIZABETH MAGPANTAY; EVELYN Y.
SANTOS; MARIA ELOISA LIWAG;
NORMA UY; RUTH UY,
         *Plaintiffs-Appellants,*

        v.

ALEJANDRO MAYORKAS, Director,
United States Citzenship and
Immigration Services; JANET
NAPOLITANO, Secretary of the
Department of Homeland Security,
HILLARY RODHAM CLINTON,
Secretary of State,
         *Defendants-Appellees.*

No. 09-56786

D.C. No.
5:08-cv-00840-
JVS-SH

16793

TERESITA G. COSTELO; LORENZO P.
ONG, Individually and on Behalf
of all Others Similarly Situated,
           *Plaintiffs-Appellants,*

                    v.

JANET NAPOLITANO, Secretary of
the Department of Homeland
Security; UNITED STATES
CITIZENSHIP AND IMMIGRATION
SERVICES; ALEJANDRO MAYORKAS,
Director, United States Citizenship
and Immigration Services; LYNNE
SKEIRIK, Director, National Visa
Center; CHRISTINA POULOS, Acting
Director, California Service
Center, United States Citizenship
and Immigration Services; HILLARY
RODHAM CLINTON, Secretary of
State,
           *Defendants-Appellees.*

No. 09-56846

D.C. No.
8:08-cv-00688-
JVS-SH

OPINION

Appeal from the United States District Court
for the Central District of California
James V. Selna, District Judge, Presiding

Argued and Submitted
July 15, 2011—Pasadena, California

Filed September 2, 2011

Before: Pamela Ann Rymer, Richard C. Tallman, and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Tallman

## COUNSEL

Nancy E. Miller (argued), Robert L. Reeves, Jeremiah Johnson, Anthony J. Favero, Reeves and Associates, APLC, Pasadena, California; Amy Prokop, Carl Shusterman, Law Offices of Carl Shusterman, Los Angeles, California; for plaintiffs-appellants Teresita G. Costelo, Lorenzo P. Ong, Rosalina Cuellar de Osorio, Elizabeth Magpantay, Evelyn Y. Santos, Maria Eloisa Liwag, Norma Uy and Ruth Uy.

Gisela A. Westwater (argued), Elizabeth J. Stevens, Aaron D. Nelson, United States Department of Justice, Office of Immigration Litigation, Washington, D.C., for defendants-appellees Janet Napolitano, Jonathan Scharfen, et al.

Mary Kenney, American Immigration Council, Washington, D.C., for amici curiae American Immigration Council and American Immigration Lawyers Association.

**OPINION**

TALLMAN, Circuit Judge:

This case involves parents who face separation from their children due to the way our immigration system operates. Appellants, the parents, have all immigrated to the United States and become lawful permanent residents. Their children, however, have not been able to join them because the children are no longer under the age of 21.

Appellants became lawful permanent residents through the family-sponsored immigration process, which allows certain aliens to immigrate based on their status as relatives of either U.S. citizens or lawful permanent residents. When Appellants began this process, they all had children under the age of 21 who would have been eligible to immigrate with them under the Immigration and Nationality Act (INA). *See* 8 U.S.C. §§ 1101(b)(1), 1153(d) (entitling a child under the age of 21 to the same immigration status as a parent). However, due to years-long delays associated with the family-sponsored immigration process, these children turned 21 before their parents were able to immigrate or adjust status. Because these children had "aged out" of child status under the INA by the time their parents immigrated or adjusted status, they were no longer eligible to accompany their parents.

The question we are faced with today is whether Appellants' children are entitled to any relief under the Child Status Protection Act (CSPA), 8 U.S.C. § 1153(h), which was enacted to help keep families together by expediting the immigration process for certain aged-out aliens. United States Citizenship and Immigration Services (CIS) denied Appellants' requests for relief under the CSPA, and Appellants challenge the denial as arbitrary and capricious. The district court, deferring to the Board of Immigration Appeals' (BIA) interpretation of § 1153(h), held that the CSPA did not apply to Appellants' children. Because we agree that the BIA's

interpretation of § 1153(h) warrants deference, we affirm the district court's grant of summary judgment in favor of CIS. We hold that Appellants' children are not among the aged-out aliens entitled to relief under § 1153(h).

# I

Understanding this appeal requires familiarity with the family-sponsored immigration process and, specifically, the complicated family preference system. Family-sponsored immigration is one of the primary avenues by which an alien can obtain lawful permanent residence in the United States, along with employment-based immigration, diversity-based immigration, and asylum. The family-sponsored immigration process allows a U.S. citizen or lawful permanent resident (LPR) to file a form I-130 immigration petition on behalf of an alien relative. 8 U.S.C. § 1153(a). After the petition is filed, CIS determines if it establishes a qualifying relationship between the citizen or LPR petitioner and the alien relative beneficiary. Because there is no annual cap on the number of permanent resident visas (also known as "green cards") available to immediate relatives of U.S. citizens, a citizen's spouse, child under the age of 21, or parent can apply for one immediately.

For other qualifying relatives of citizens and for qualifying relatives of LPRs, the number of visas available annually is capped. *Id.* § 1151(c). To allocate these visas, the INA establishes the following preference system:

> Aliens subject to the worldwide [numerical limitation] for family-sponsored immigrants shall be allotted visas as follows:
>
> (1) Unmarried sons and daughters [age 21 or older] of citizens
>
> Qualified immigrants who are the unmarried sons or daughters of citizens of the United States shall be

allocated visas in a number not to exceed [numerical quota formula].

(2) Spouses and unmarried sons and unmarried daughters of permanent resident aliens

Qualified immigrants—

> **(A)** who are the spouses or children [under 21] of an alien lawfully admitted for permanent residence, or

> **(B)** who are the unmarried sons or unmarried daughters (but are not the children) of an alien lawfully admitted for permanent residence,

shall be allocated visas in a number not to exceed [numerical quota formula].

(3) Married sons and married daughters of citizens

Qualified immigrants who are the married sons or married daughters of citizens of the United States shall be allocated visas in a number not to exceed [numerical quota formula].

(4) Brothers and sisters of citizens

Qualified immigrants who are the brothers or sisters of citizens of the United States, if such citizens are at least 21 years of age, shall be allocated visas in a number not to exceed [numerical quota formula].

*Id.* § 1153(a). If an I-130 petition establishes one of these qualifying relationships, CIS approves it and places the alien beneficiary "in line" in the appropriate preference category. These family preference categories are referred to as F1, F2A,

F2B, F3, or F4, corresponding to § 1153(a)'s numbered paragraphs.

Because annual demand for family preference visas exceeds the statutory cap in all categories, a beneficiary may wait years before a visa becomes available, with some categories having longer wait times than others. The beneficiary's place in line is determined by the date the petition was filed, which is known as the "priority date." Every month, the State Department publishes a visa bulletin with updated "cut off dates" for each family preference category. When the cut-off date is later than the beneficiary's priority date, the priority date is "current," and a lawful permanent resident visa is then available for the beneficiary. In order to obtain the visa and become an LPR, however, the beneficiary must act within one year of notification of visa availability to complete consular processing (if abroad) or apply for an adjustment of status (if present in the United States).

Under the INA, a beneficiary's spouse or child is deemed a "derivative" beneficiary entitled to the same immigration status and priority date as the primary beneficiary:

> A spouse or child . . . shall, if not otherwise entitled to an immigrant status and the immediate issuance of a visa under subsection (a) . . . of this section, be entitled to the same status, and the same order of consideration provided in the respective subsection, if accompanying or following to join, the spouse or parent.

8 U.S.C. § 1153(d). Importantly, to be considered a "child," a person must be unmarried and under the age of 21. *Id.* § 1101(b)(1). Due to the long wait times often associated with family preference visas, some aliens who begin the process eligible to immigrate as a child—either as the primary beneficiary of an F2A petition or as a derivative beneficiary of a petition for a parent in any of the other family preference

categories—will "age out" of eligibility by turning 21 before a visa becomes available.

In 2002, Congress enacted the CSPA to provide relief to "aged out" alien children by allowing them either to maintain "child" status longer, *see* 8 U.S.C. § 1153(h)(1), or to automatically convert to a valid adult visa category while retaining the priority date associated with their original petition, *see id.* § 1153(h)(3). The issue before us is whether an aged-out derivative beneficiary of an F3 petition (for married sons or daughters of U.S. citizens) or F4 petition (for siblings of U.S. citizens)—i.e., a grandchild or niece or nephew of a U.S. citizen—is entitled to automatic conversion and priority date retention, or either of them separately, under the CSPA.

## II

Two cases, each with multiple plaintiffs, were consolidated before us in this appeal. The facts of these cases illustrate the family-sponsored immigration process and the age-out problem.

## A

In one case, Rosalina Cuellar de Osorio was the beneficiary of an F3 petition filed by her U.S. citizen mother on May 5, 1998. Cuellar de Osorio's son, who was born in July 1984, was thirteen at the time and a derivative beneficiary of the F3 petition. By the time Cuellar de Osorio's priority date became current on November 1, 2005, her son had turned 21 and aged out of derivative status. Therefore, he was no longer eligible to immigrate with his mother. After Cuellar de Osorio became an LPR in August 2006, she filed an F2B petition (for adult sons or daughters of LPRs) on behalf of her son. Invoking the CSPA, she requested retention of the original F3 petition's May 5, 1998, priority date for the F2B petition, which would enable her son to immigrate much sooner than if he was

assigned a more recent priority date based on the F2B filing date.

On June 23, 2008, Cuellar de Osorio filed a lawsuit against CIS in the Central District Court of California along with several other similarly situated plaintiffs who had asked CIS for (and not obtained) priority date retention for their aged-out children.[1] They sought declaratory and mandamus relief, alleging that CIS arbitrarily and capriciously failed to grant the requested priority dates in violation of the CSPA provisions codified at 8 U.S.C. § 1153(h)(3).

The district court held the case in abeyance pending a precedential BIA decision interpreting § 1153(h) in *Matter of Wang*. On June 16, 2009, the BIA issued its decision, which held that the automatic conversion and priority date retention provisions of the CSPA did not apply to derivative beneficiaries of F4 petitions. *See* 25 I. & N. Dec. 28 (B.I.A. 2009). The district court then granted summary judgment to CIS on October 9, 2009, holding that the BIA's interpretation of § 1153(h) in *Matter of Wang*, according to which the Plaintiffs were not entitled to relief, should receive *Chevron* deference. Plaintiffs timely appealed.

---

[1]Sisters Elizabeth Magpantay, Evelyn Y. Santos, and Maria Eloisa Liwag were each the beneficiary of an F3 petition filed by their U.S. citizen father on January 29, 1991. Each also has children who aged out of derivative status before the F3 petition's priority date became current on December 15, 2005. The sisters seek to retain the F3 petition's 1991 priority date on new F2B petitions they have filed for their now-adult sons and daughters.

Norma Uy was the beneficiary of an F4 petition filed by her U.S. citizen sister on February 4, 1981. She has a daughter, Ruth, who aged out of derivative status before the F4 petition's priority date became current in July 2002. Norma and Ruth seek to retain the F4 petition's 1981 priority date on a new F2B petition Norma has filed on behalf of Ruth.

**B**

Meanwhile, on June 20, 2008, Teresita G. Costelo and Lorenzo Ong had separately filed a class-action lawsuit in district court. Costelo was the beneficiary of an F3 petition filed by her U.S. citizen mother on January 5, 1990. At the time, she had two daughters, aged 10 and 13, who were derivative beneficiaries of the petition. By the time Costelo's priority date became current fourteen years later in 2004, both daughters had aged out of derivative status. After Costelo became an LPR, she filed F2B petitions for her adult daughters and requested retention of the January 5, 1990, priority date for the F2B petitions.

Ong was the beneficiary of an F4 petition filed by his U.S. citizen sister in 1981. At that time, he had two daughters, aged 2 and 4. By the time Ong's priority date became current twenty-one years later in 2002, his daughters had aged out of derivative status. In March 2005, after Ong obtained LPR status, he filed F2B petitions on behalf of his now-adult daughters and requested retention of the 1981 priority date for these petitions.

On July 16, 2009, the district court certified a class in *Costelo v. Chertoff* consisting of:

> Aliens who became lawful permanent residents as primary beneficiaries of [F3 and F4] visa petitions listing their children as derivative beneficiaries, and who subsequently filed [F2B] petitions on behalf of their aged-out unmarried sons and daughters, for whom Defendants have not granted automatic conversion or the retention of priority dates pursuant to § [1153](h)(3).

After the parties cross-moved for summary judgment, the district court granted summary judgment to the government on November 12, 2009, again deferring to *Matter of Wang*.

Plaintiffs timely appealed. The appeals in *De Osorio* and *Costelo* have been consolidated before us.

## III

We review de novo a district court's grant of summary judgment. *Family Inc. v. U.S. Citizenship & Immigration Servs.*, 469 F.3d 1313, 1315 (9th Cir. 2006). The interpretation of a statute is a question of law, *United States v. Cabaccang*, 332 F.3d 622, 624-25 (9th Cir. 2003) (en banc), and "we review *de novo* the BIA's determination of questions of law, except to the extent that deference is owed to its interpretation of the governing statutes and regulations." *Garcia-Quintero v. Gonzales*, 455 F.3d 1006, 1011 (9th Cir. 2006). We review a precedential decision of the BIA interpreting a governing statute according to the principles of *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984). *INS v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999).

Under the familiar two-step *Chevron* framework, we first ask "whether Congress has directly spoken to the precise question at issue." 467 U.S. at 842. If it has, we "must give effect to the unambiguously expressed intent of Congress," regardless of the agency's interpretation. *Id.* at 842-43. If, on the other hand, the statute is "silent or ambiguous" with regard to the issue, we proceed to step two and determine "whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843 (footnote omitted). We must defer to the agency's interpretation if it is reasonable. *Id.* at 844 (holding that when Congress has left a gap for an agency to fill, "a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator or agency.").

## IV

We now turn to the statutory provision at issue. In order to address the age-out problem, Congress passed the CSPA in

2002. *See* Child Status Protection Act, Pub. L. No. 107-208, 116 Stat. 927 (2002). The CSPA, in relevant part, amended the INA to provide as follows:

(h) Rules for determining whether certain aliens are children

(1) In general

For purposes of subsections (a)(2)(A) and (d) of this section, a determination of whether an alien satisfies the age requirement . . . of this title shall be made using—

(A)   the age of the alien on the date on which an immigrant visa number becomes available for such alien (or, in the case of subsection (d) of this section, the date on which an immigrant visa number became available for the alien's parent), but only if the alien has sought to acquire the status of an alien lawfully admitted for permanent residence within one year of such availability; reduced by

(B)   the number of days in the period during which the applicable petition described in paragraph (2) was pending.

(2) Petitions described

The petition described in this paragraph is—

(A) with respect to a relationship described in subsection (a)(2)(A) of this section, a petition filed . . . for classification of an alien child under subsection (a)(2)(A) of this section; or

(B) with respect to an alien child who is a derivative beneficiary under subsection (d) of this section, a petition filed . . . for classification of the alien's parent under subsection (a), (b), or (c) of this section.

(3) Retention of priority date

If the age of an alien is determined under paragraph (a) to be 21 years of age or older for the purposes of subsections (a)(2)(A) and (d) of this section, the alien's petition shall automatically be converted to the appropriate category and the alien shall retain the original priority date issued upon receipt of the original petition.

8 U.S.C. § 1153.

**[1]** The parties do not dispute the meaning of paragraphs (1) and (2) above. Paragraph (1) provides that, if an alien applies for a visa within a year of one becoming available (i.e., within one year of the priority date on a relevant petition becoming current), the alien's age for purposes of determining whether she is a "child" is determined by her age on the date the visa became available minus the number of days that the petition was "pending"—that is, the number of days between the *filing* of the petition with CIS and its *approval* by CIS. *See Ochoa-Amaya v. Gonzales*, 479 F.3d 989, 993 (9th Cir. 2007). In this way, paragraph (1) ensures that an alien does not lose "child" status solely because of administrative delays in the processing of an otherwise valid petition. However, it does not address the much longer oversubscription delays that are typical between the *approval* of a petition and the *availability* of a visa.[2]

---

[2]For example, imagine that a U.S. citizen filed a petition for an alien relative on September 1, 2002, that was approved by CIS on September 15, 2002, and the beneficiary's priority date became current on September 15,

Paragraph (2), which is referenced at paragraph (1)(B), simply defines the universe of petitions to which the age-reduction formula in paragraph (1) applies. Paragraph (2)(A) refers to F2A petitions for children of LPRs. *See* 8 U.S.C. § 1153(a)(2)(A). Paragraph (2)(B) refers to any family preference petition for which a child is a derivative beneficiary.[3] *See id.* § 1153(d).

**[2]** At issue is the meaning of paragraph (3), which provides relief to aliens who are 21 or over even after the age-reduction formula in paragraph (1) is applied. In such a case, "the alien's petition shall automatically be converted to the appropriate category and the alien shall retain the original priority date issued upon receipt of the original petition." *Id.* § 1153(h)(3). Importantly, this is different from the relief offered by paragraph (1). Paragraph (1) allows an aged-out alien to remain eligible for a visa as a "child" under the original petition. Paragraph (3), in contrast, does not allow the aged-out alien to retain child status. Instead, it allows him to move into a different category as an *adult* without having to file a new petition and get a new priority date. The aged-out alien may still wait in line in the new category, but because he is able to retain an older priority date, his wait time is reduced. The parties dispute whether aged-out derivative beneficiaries of F3 and F4 petitions are entitled to this relief. To answer this question, we undertake our *Chevron* analysis.

---

2010. The age of a beneficiary or derivative beneficiary for purposes of determining whether she was still a "child" would be determined by subtracting 15 days from her age on September 15, 2010. No adjustment to her age would be made to compensate for the eight years between September 15, 2002, and September 15, 2010. *See Ochoa-Amaya*, 479 F.3d at 993 (rejecting argument that a petition is "pending" for purposes of § 1153(h)(1)(B) from the date it is filed until the date a visa becomes available).

[3]It also refers to any employment-based or diversity-based petition for which a child is a derivative beneficiary. *See* 8 U.S.C. § 1153(b), (c). Those petitions are not relevant to this appeal.

## A

Our first charge under *Chevron* is to ascertain, by "employing traditional tools of statutory construction," whether "Congress had an intention on the precise question at issue." 467 U.S. at 843 n.9. We begin, as always, with an examination of the statute's plain language. *See Nw. Env. Def. Ctr. v. Brown*, 640 F.3d 1063, 1070 (9th Cir. 2011).

## 1

First of all, we reject any contention that the word "petition" in paragraph (3) is ambiguous because it is not defined by express reference to paragraph (2), as it is in paragraph (1). As we explain, express reference to paragraph (2) is unnecessary.

**[3]** Paragraph (3)'s initial clause makes it contingent upon the operation of paragraph (1). *See* 8 U.S.C. § 1153(h)(3) ("If the age of an alien is determined under paragraph (1) to be 21 years of age or older . . ."). Thus, paragraph (3) is triggered only if one has determined by doing the age-reduction calculation in paragraph (1) that an alien is 21 or over.[4] If it is triggered, "the alien's petition shall automatically be converted to the appropriate category and the alien shall retain the original priority date issued upon receipt of the original petition." *Id.* Because "the alien" is necessarily one to whom paragraph (1) was applied, "the alien's petition" naturally refers to the "applicable petition" that was considered in paragraph (1)(B). *See id.* § 1153(h)(1)(B). After all, if the alien had a petition that

---

[4]The facts of Cuellar de Osorio's case illustrate how paragraph (1)'s calculation works with respect to paragraph (3). Cuellar de Osorio's original F3 petition was filed on May 5, 1998, and approved on June 30, 1998. Thus, it was "pending" for 56 days. Her son, who was a derivative of the F3 petition, was born on July 18, 1984. When the petition's priority date became current on November 1, 2005, he was 21 years and 106 days old. Subtracting the 56 days of "pending" time, his age is 21 years, 50 days. Therefore, he is 21 or over, and paragraph (3) is triggered.

was not an "applicable petition" under paragraph (1), the alien would never undergo the paragraph (1) calculation, and therefore, would never be considered at paragraph (3).

An "applicable petition" in paragraph (1) is explicitly defined by reference to paragraph (2). *See* § 1153(h)(1)(B) (referring to "the applicable petition described in paragraph (2)"). As explained previously, paragraph (2) describes F2A petitions for a child and any family preference petition for which a child is a derivative beneficiary. Therefore, paragraph (3) says that any of these petitions "shall automatically be converted to the appropriate category and the alien shall retain the original priority date issued upon receipt of the original petition." *Id.* § 1153(h)(3). Despite this plain language, however, we find that paragraph (3)'s meaning is ambiguous for another reason.

**2**

The plain language of a statute does not control if "its application leads to unreasonable or impracticable results." *Valladolid v. Pac. Operations Offshore, LLP*, 604 F.3d 1126, 1133 (9th Cir. 2010) (internal quotation and citation omitted); *see also Avendano-Ramirez v. Ashcroft*, 365 F.3d 813, 816 (9th Cir. 2004). Despite paragraph (3)'s plain language, it does not practicably apply to certain of the petitions described in paragraph (2).

The phrase "the alien's petition shall automatically be converted to the appropriate category," 8 U.S.C. § 1153(h)(3), suggests that the *same* petition, filed by the *same* petitioner for the *same* beneficiary, converts to a new category. This understanding comports with the ordinary meaning of the word "automatic," which implies that the conversion should happen without any outside input, such as a new petitioner. It also comports with current regulatory practice allowing "automatic conversion" of a petition between certain family preference categories upon the beneficiary's change in marital

status or attainment of the age of 21, or upon the petitioner's naturalization. *See* 8 C.F.R. § 204.2(i). In each of these situations, it is the qualifying relationship that changes, *not* the identity of petitioner or the beneficiary. Since there is no change in the parties to the petition, the same petition can simply be reclassified "automatically."

Not so, however, for F3 and F4 petitions when a derivative ages out. In such a case, there is no "appropriate category" for the petition to "automatically be converted to" vis-a-vis the same petitioner. For example, in the case of an F3 petition for married sons and daughters of U.S. citizens for which a child is a derivative beneficiary, the original petitioner is the child's U.S. citizen grandparent. After the derivative turns 21, there is no qualifying relationship between the petitioner and the derivative, because a U.S. citizen cannot petition on behalf of an adult grandson or granddaughter. *See* 8 U.S.C. § 1153(a). The same difficulty arises in the case of an F4 petition for a U.S. citizen's sibling for which a child is a derivative beneficiary. The original petitioner is the child's U.S. citizen aunt or uncle. After the derivative turns 21, there is no qualifying relationship between the petitioner and the derivative, because a U.S. citizen cannot petition on behalf of a niece or nephew. *See id.*

Appellants contend that there is an "appropriate category" for an aged-out F3 or F4 derivative to convert into because, at the moment paragraph (3) operates, the derivative can establish a qualifying F2B relationship as the adult son or daughter of an LPR. Paragraph (3) operates when a visa has become available for the derivative's parent as the primary beneficiary of the F3 or F4 petition, the derivative has applied for a visa within one year, and the derivative has been determined to be 21 or older under paragraph (1).[5] *See id.*

---

[5]To the extent that the government argues that paragraph (3) operates at the moment the derivative turns 21, we disagree. Paragraph (3) cannot possibly operate at the moment the derivative turns 21, because it is not even triggered until the derivative has already been determined to be *at least* 21 even after subtracting pending petition time as required by paragraph (1). *See* 8 U.S.C. § 1153(h).

§ 1153(h)(1). At that point, the derivative's parent may have obtained LPR status under the original F3 or F4 petition, in which case the aged-out derivative qualifies for the F2B category. But while F2B may well be an "appropriate category" for the aged-out derivative to convert to, this conversion cannot "automatically" take place, given that a new petitioner— the LPR parent—is required. Appellants essentially ask us to ignore the word "automatically" in paragraph (3). We decline to do so. *See Miller v. United States*, 363 F.3d 999, 1008 (9th Cir. 2004) ("Courts must aspire to give meaning to every word of a legislative enactment.").

**[4]** In short, despite the fact that the word "petition" in paragraph (3) can be read to encompass all petitions in paragraph (2), including F3 and F4 petitions, automatic conversion does not practically apply to F3 and F4 petitions. Therefore, we find paragraph (3)'s meaning to be unclear.

### 3

Appellants argue that, regardless of whether automatic conversion applies, paragraph (3) unambiguously entitles an aged-out derivative beneficiary of an F3 or F4 petition to priority date retention. We disagree because we find that Congress did not speak clearly as to whether priority date retention can be applied independently of automatic conversion.

Again turning to the text of paragraph (3), if an alien is determined to be 21 or older, "the alien's petition shall automatically be converted to the appropriate category and the alien shall retain the original priority date issued upon receipt of the original petition." 8 U.S.C. § 1153(h)(3). It is certainly possible to read this language, which includes two grammatically independent clauses, as conferring automatic conversion and priority date retention as independent benefits. However, it is also entirely possible to interpret it as conferring those two benefits jointly. *See Li v. Renaud*, ___ F.3d ___, 2011

WL 2567037 at *7 (2d Cir. 2011) ("Congress could have, but did not, provide beneficiaries the option to select *either* conversion *or* retention *or* both."). Automatic conversion and priority date retention commonly (though not always) happen together in the family-sponsored immigration scheme. *See* 8 C.F.R. § 204.2(i) (providing priority date retention with automatic conversion). *But cf. id.* § 204.2(a)(4) (granting priority date retention without automatic conversion). Furthermore, elsewhere in the CSPA, Congress much more explicitly indicated when it intended automatic conversion and priority date retention to operate independently. *See* CSPA § 6, *codified at* 8 U.S.C. § 1154(k)(3) ("Regardless of whether a petition is converted under this subsection or not, if an [alien] described in this subsection was assigned a priority date with respect to such petition . . . he or she may maintain that priority date.").

Because paragraph (3) can be interpreted both ways, it is ambiguous. When a statutory provision is ambiguous, we may "look to its legislative history for evidence of congressional intent," *United States v. Daas*, 198 F.3d 1167, 1174 (9th Cir. 1999), but in this case the legislative history is inconclusive. There is no specific discussion of particular age-out protections for derivative beneficiaries of family preference petitions. *See, e.g.*, H.R. Rep. No. 107-807, at 49-50 (2003). Because we find no clearly expressed congressional intent on the precise question whether derivative beneficiaries of F3 and F4 petitions are entitled to automatic conversion or priority date retention, we must proceed to step two of the *Chevron* analysis.

**B**

At step two of *Chevron* we ask whether the administering agency's interpretation of the statutory provision at issue is "permissible." *See* 467 U.S. at 843. The step two test "is satisfied if the agency's interpretation reflects a plausible construction of the statute's plain language and does not otherwise conflict with Congress' expressed intent." *Or.*

*Trollers Ass'n v. Gutierrez*, 452 F.3d 1104, 1116 (9th Cir. 2006) (internal quotation omitted). "We will not overturn an agency decision at the second step unless it is arbitrary, capricious, or manifestly contrary to the statute." *Ramos-Lopez v. Holder*, 563 F.3d 855, 859 (9th Cir. 2009) (internal quotation omitted).

**[5]** The relevant agency interpretation of § 1153(h)(3) was articulated by the BIA in *Matter of Wang*, 25 I. & N. Dec. 28. In *Matter of Wang*, the BIA found that, under the existing regulatory scheme, "automatic conversion" happens only when "neither the beneficiary nor an immigration officer need take any action to effect the conversion to the new preference category." *Id.* at 35. Thus, the BIA concluded that a petition could only "automatically be converted" under § 1153(h)(3) when it could transfer from one visa category to another such that "the beneficiary of that petition then falls within a new classification without the need to file a new visa petition." *Id.* The BIA also concluded that priority date retention could *not* operate separately from automatic conversion, rejecting the contention that "all children who were derivative beneficiaries would gain favorable priority date status, even with regard to a new visa petition that is wholly independent of the original petition and that may be filed without any time limitation in the future." *Id.* at 36; *see also id.* at 39 (finding no clear legislative intent "to create an open-ended grandfathering of priority dates that allow[s] derivative beneficiaries to retain an earlier priority date set in the context of a different relationship, to be used at any time").

**[6]** The effect of *Matter of Wang* is to limit § 1153(h)(3)'s applicability to only one petition type: F2A. This is the only petition with an "appropriate category" to which an aged-out primary or derivative beneficiary may "automatically be converted" without a change in petitioner. For example, an aged-out primary beneficiary of an F2A petition filed by his LPR parent can become the beneficiary of an F2B petition filed by that same parent. The same is true for an aged-out derivative

beneficiary of an F2A petition filed by his LPR parent for a spouse.[6] But an aged-out derivative beneficiary of any other family preference petition category, such as F3 or F4, cannot qualify for a new category without a new petitioner.

**[7]** We find the BIA's interpretation of § 1153(h)(3) to be a "permissible" one. *See Chevron*, 467 U.S. at 843. It "reflects a plausible construction of the statute's plain language," *Or. Trollers Ass'n*, 452 F.3d at 1116 (internal quotation omitted), because it accords with the ordinary usage of the word "automatic" to describe something that occurs without requiring additional input, such as a different petitioner. We also note that, contrary to Appellants' assertion, the BIA's construction does not render § 1153(h)(3)'s reference to § 1153(d) meaningless. *See* 8 U.S.C. § 1153(h)(3) (referring to "subsections (a)(2)(A) *and (d)*" (emphasis added)). The reference to subsection (d), which entitles an alien beneficiary's child to the same status as the parent, has a clear function under the BIA's interpretation because it covers aged-out *derivative beneficiaries* of F2A petitions. Without this reference, only aged-out *primary* beneficiaries of F2A petitions would be entitled to relief, because subsection (a)(2)(A) refers only to the spouses or children of LPRS, not the children of alien beneficiaries.

Appellants also argue that the BIA's interpretation is unreasonable because it effects no significant change from the status quo. It is true that prior to CSPA's passage, an aged-out derivative beneficiary of an F2A petition was already entitled to priority date retention when an F2B petition was filed on his or her behalf. *See* 8 C.F.R. § 204.2(a)(4) ("[I]f the [derivative beneficiary of an F2A petition] reaches the age of twenty-one prior to the issuance of a visa to the principal alien parent, a separate petition will be required. In such a case, *the origi-*

---

[6]Note that a child can be either a primary or a derivative beneficiary of an F2A petition. Many families choose to save filing fees by including a child as a derivative on an F2A petition for a spouse rather than as a primary beneficiary on a separate F2A petition.

*nal priority date will be retained if the subsequent petition is filed by the same petitioner.*" (emphasis added)). But this regulation does not provide for automatic conversion, and it does not address aged-out *primary* beneficiaries of F2A petitions. Therefore, § 1153(h)(3) as interpreted by the BIA is not without effect.

Nor do we find that this interpretation "conflict[s] with Congress' expressed intent." *Or. Trollers Ass'n*, 452 F.3d at 1116. It is clear that Congress wanted the CSPA to provide some measure of age-out relief to *all* derivative beneficiaries of family preference petitions. *See, e.g.*, H.R. Rep. No. 107-807 at 49 (referring to the CSPA as "extend[ing] age-out protection" to the children of family-sponsored immigrants). However, it is undisputed that *all* derivative beneficiaries are protected from age-out due to administrative delays under § 1153(h)(1). In fact, this was the only form of relief that House sponsors referred to when they introduced the provisions at issue, which the Senate had added. *See, e.g.*, 148 Cong. Rec. H4990 (daily ed. July 22, 2002) (statement of Rep. Sensenbrenner) (noting that the Senate's amendments addressed "situations where alien children lose immigration benefits by 'aging out' *as a result of INS processing delays*.") (emphasis added).

As the BIA recognized, protection from administrative delays was highly significant to Congress. *See Matter of Wang*, 25 I. & N. Dec. at 36-37 (noting that "the drive for the legislation was the then-extensive administrative delays in the processing of visa petitions"). While the Senate bill's sponsor expressed an intent to address oversubscription delays as well, she focused only on children of LPRs, who could fall into the F2A category. *See* 147 Cong. Rec. S3275-76 (daily ed. Apr. 2, 2001) (statement of Sen. Feinstein). Given that § 1153(h)(1) entitles *all* derivative children to relief from administrative delays, we cannot say that the BIA's interpretation of § 1153(h)(3) is contrary to congressional intent sim-

ply because it affords *additional* relief only to children in the F2A category.

**[8]** Finally, we point out that limiting § 1153(h)(3)'s applicability to F2A petitions is "a reasonable policy choice for the agency to make." *Chevron*, 467 U.S. at 845. Applying § 1153(h)(3) to *all* derivative beneficiaries would result in a fundamental change to the family preference scheme, because it would effectively treat an aged-out derivative beneficiary of an F3 or F4 petition as if he or she had been independently entitled to his or her own priority date based on his or her status as the grandchild, niece, or nephew of a citizen. However, those relationships have never been recognized as qualifying ones under U.S. immigration law. This same problem does not arise for a derivative of an F2A petition because he or she can be independently eligible for a priority date as the primary beneficiary of an F2A petition. It is therefore not arbitrary or otherwise unreasonable for the BIA's interpretation of § 1153(h)(3) to draw the line where it does. This interpretation warrants our deference under *Chevron*.

**V**

**[9]** We hold that § 1153(h)(3) is ambiguous as to whether derivative beneficiaries of F3 and F4 family preference petitions are entitled to automatic conversion or priority date retention. Because we also hold that the BIA's interpretation of § 1153(h)(3) is reasonable, we defer to it under *Chevron*. Under that interpretation, automatic conversion and priority date retention do not apply to F3 and F4 petitions. Therefore, Appellants are not entitled to relief. The judgment of the district court is **AFFIRMED**.