IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| DISCOVER BANK, ISSUER OF THE DISCOVER CARD, | ) ) ) | No. 31080-9-III |
| Appellant, | ) ) | |
| v. | ) ) | PUBLISHED OPINION |
| MAURIE L. LEMLEY and DOE I, and their marital community composed thereof, | ) ) ) | |
| Respondents. | ) ) | |

FEARING, J. — Discover Bank filed suit against Maurie and Linda Lemley, husband and wife, for failing to pay a credit card debt. The trial court granted the Lemleys' summary judgment motion, ruling that Discover Bank failed to present admissible evidence establishing the Lemleys entered into a contract, let alone owed the bank the alleged $5,729.28. Discover Bank appeals the summary judgment order. The principal issue raised by the parties on appeal concerns the qualifications needed by an affiant on behalf of a major credit card company to identify the controlling contract with the debtor and establish the amounts owed, in response to a summary judgment motion. We do not address this issue, but instead remand the case to the trial court for another summary judgment hearing. At the new hearing, the court should consider the affidavits

despite their not being labeled in opposition to the Lemleys' summary judgment motion,

unless they are inadmissible or should be stricken, in whole or in part, on other grounds.

## FACTS AND PRODECURE

This outline of facts chronologically follows events during this lawsuit. Some of

the underlying facts will emerge when identifying and outlining affidavits filed in support

of and in opposition to summary judgment motions.

On December 16, 2010, Discover Bank filed suit alleging Maurie and Linda

Lemley failed to pay a debt they accrued on their Discover Card. The Lemleys,

unrepresented by counsel, responded on January 18, 2011. The response read, in part:

> They have double[d] what I borrowed and now [are] asking for
> 12% interest. I do not think this is fair. I realize I asked for this
> credit card. But due to circumstances beyond my control. First the
> plant I worked for for 10 years closed and both myself and my wife
> lost our jobs. Our house was au[c]tioned off by the bank. We [went]
> home one night and the locks were changed. Then I find out that the
> fire I was in, the blood the[y] used to keep me alive, had Hep C in it
> and was now years after causing me Pain and exhaustion to a point I
> can no longer work. I am applying for SSD and have been denied and
> on reconsideration at the moment.
> . . . .
> After letting them know what was going on, they started calling[.] I
> told them again what was happening. [N]ext week they called again
> asking me if I could borrow the money from a relative, was there
> anyway I could get the money. I told them I could not and I was
> applying for SSD. Next week same thing they would call asking why
> I was not making payments could I borrow money to pay them. If
> I did not answer the phone they would call my wife and I 2 to 3 times
> aday each sometimes I would answer and they would hang up.

Clerk's Papers (CP) at 10. Counsel later appeared for the Lemleys.

On July 28, 2011, Discover Bank moved for summary judgment. In support of its motion, Discover submitted an affidavit of Patrick Sayers, account manager for DB Servicing Corporation. In the affidavit, Sayers described his qualifications as follows:

> I am an account manager in the Attorney Placement Department for DB Servicing Corporation, the servicing affiliate of DISCOVER BANK, ISSUER OF THE DISCOVER CARD, an FDIC insured Delaware State Bank collectively ("Discover"). I am responsible for managing and overseeing the Discover accounts that have resulted in contested litigation. Included within the scope of my responsibilities includes the performance of collection and recovery services. I make this affidavit on the basis of my personal knowledge and a review of the records maintained by Discover with respect to the account at issue. All such records are maintained in the regular course of business at or near the time of the events recorded. I am a Designated Agent and a Custodian of the records.

CP at 15.

In his affidavit, Patrick Sayers testified:

> On or about October 01, 2006 Defendant opened a Discover Credit Card. Attached hereto is true and correct copies of the Cardmember Agreement and Application which govern the credit card account at issue, along with periodic statements and evidence of payments on the account. No payments have been made since February 24, 2010, and Defendant has defaulted under the terms of the Cardmember Agreement by failing to make the payments due as required by the agreement.
> At the time that the suit was commenced, the principal balance on the account was $5,729.78.

CP at 16. The affidavit was signed in New Albany, Ohio. Contrary to the affidavit, Sayers did not attach any application.

3

The first page attached to Patrick Sayers' affidavit is a Discover Financial Services "TM SALE DETAIL REPORT." CP at 17. Sayers' affidavit does not identify or explain the nature or content of the report. The report may attempt to document a call, on September 27, 2006, from Maurie Lemley, during which he requested a Discover card.

The next 14 pages attached to Sayers' affidavit is a Discover account cardmember account agreement. A date printed on the bottom right-hand corner of each page of the agreement is December 15, 2009, i.e., three years after which Discover contends Maurie Lemley opened an account and two years after which Lemley made his last purchase by a charge on the card. Curiously, the corner also includes the time of 1:37 p.m., which may suggest the date and time is the date of printing the document from a computer, but such date precedes the lawsuit by more than one year. Each page also includes a "second" designation, with the first page starting at 1:37:03 p.m., the last page ending at 1:37:07 p.m., and intervening pages progressing periodically with the second. The attached agreement is copyrighted in the year 2010, by Discover Bank, Member FDIC. Maurie Lemley did not sign the cardmember agreement, nor did any person on behalf of Discover Bank sign the agreement.

The first page of the Discover account cardmember account agreement reads, in part:

> Please read this Agreement carefully before using your Discover®
> Card Account. It contains the terms and conditions of your Account,
> some of which may have changed from earlier materials provided to

4

you. In the event of any differences, this Agreement shall control.

CP at 19.

Sixty-three pages of credit card account statements, beginning in November 2006 and ending in August 2010, follow the cardmember agreement as attachments to Patrick Sayers' affidavit. The statements disclose credit tactics employed by Discover Card to maximize revenue and personal details of Maurie Lemley's life. Of course, the truth of the information contained on the statements is subject to a determination of whether Patrick Sayers could properly identify the statements.

The Lemleys conducted discovery to discover Discover Bank's evidence. In response to a request to produce all records concerning the Lemleys, the bank disclosed only the documents it produced for its initial motion for summary judgment. The bank issued a blanket response to each interrogatory:

> Plaintiff responds to this request for production by providing the attached, *relevant, non-privileged* documents in its *possession, custody and/or control*. Plaintiff reserves the right to amend this response by providing additional relevant, non-privileged documents, if any, as they come into its possession, custody and/or control, if at all.

CP at 548 (emphasis added).

The Lemleys deemed Discover Bank's responses deficient and counsel held a telephonic conference as required by CR 26(i). During the conference, which was recorded, the Lemleys' counsel asked bank counsel, "You've done a reasonable . . . effort to respond to these [requests for production], correct?" CP at 891. Counsel responded,

5

"Right, yes." CP at 891. Continuing his line of questioning, the Lemleys' counsel asked, "At this time are you planning to produce any further documents?" CP at 898. Discover Bank counsel replied, "No, I'm not planning to produce any further documents." CP at 898. The suit's deadline for discovery was May 21, 2012.

Based on Discover Bank's representation during the discovery conference, the Lemleys again moved for summary judgment on May 17, 2012, and scheduled the motion hearing for June 15. They argued that Discover Bank still failed to provide admissible, competent evidence establishing a contract, much less the terms of a contract.

On May 24, Discover Bank filed its own second motion for summary judgment. The deadline for hearing dispositive motions was June 25. Summary judgment motions are heard in Spokane County Superior Court on Fridays, and the only Friday that complied with the deadline and afforded sufficient notice to the Lemleys was June 22. The judge assigned to hear the case was not available on June 22, so Discover Bank filed a motion to shorten time and to permit its summary judgment motion to be heard on June 20, at a time when a hearing was already scheduled in the suit for another motion. The record suggests that the motion for an order shortening time was also scheduled for June 20 and that the motion was never heard, since the trial court granted the Lemleys' summary judgment on June 15.

James Ball signed an affidavit in support of Discover Bank's renewed motion. Ball's affidavit reads, in part:

6

1.     I am over the age of 18 years and I am competent to testify regarding the matters in this affidavit. I make this affidavit in the basis of my personal knowledge and a review of the files and records maintained by Discover with respect to the account at issue.

2.     I am the Team Leader for the Legal Placement Department for DB Servicing Corporation, the servicing affiliate of Discover Bank, an FDIC Insured Delaware State Bank. I am authorized to make this Affidavit on behalf of DB Servicing Corporation, as servicing affiliate of Discover Bank, and have reviewed the records with respect to the account at issue.

. . . .

4.     As a Team Leader for the Legal Placement Department for DB Servicing Corporation, I manage employees who approve and maintain accounts placed with our attorney network in order to enter judgment on behalf of Discover Bank. I am familiar with the manner and methods by which Discover Bank and DB Servicing Corporation create and maintain their business records, including computer records of accounts such as records of activities, charges and payments. All such records were made at or near the time of the events recorded and were made and kept in the ordinary course of the business of Discover by individuals having knowledge of the information reflected therein. I am a custodian of those records and have access to the records, and can attest as to the identity and authenticity of the records and their mode of preparation.

5.     The account at issue was opened by telephone on October 1, 2006 at the request of Mr. Lemley. The original terms and conditions of the Discover Card Account were sent by mail to Mr. Lemley along with the credit card. A true and correct copy of the Application and original Cardmember Agreement is attached hereto as Exhibits 1 and 2. The Cardmember Agreement provided in part that:

CHANGES TO THIS AGREEMENT

We may change any term or part of this Agreement, including, but not limited to, any finance charge rate, fee or method of computing any balance upon which the finance charge rate is assessed, or add any new term or part to this Agreement. If required by law, we will send you a notice at least 15 days before the change is to become effective. We may apply any such change to the outstanding balance of your Account on the effective date of the change and to new charges made after that date. You may be offered the opportunity to reject some of the changes, and if you do, you

7

must notify us in writing within 15 days after the mailing of the notice of the change at the address provided in the notice of change, in which case your Account will be closed and you must pay us the balance that you owe us under the existing terms of the unchanged Agreement. Otherwise, you will have agreed to the changes in the notice. Use of your Account after the effective date of change will be deemed acceptance of the new terms as of such effective date, even if you previously notified us that you did not agree to the change. We may also change any term of any product, service, or benefit offered in connection with your Account. We will notify you as required by law or by the terms of the product, service, or benefit.

6. The original Cardmember Agreement was thereafter modified from time to time. Exhibit 3 shows the date the modified terms were sent to Mr. Lemley. The last modification to the terms was sent to Mr. Lemley on August 24, 2009. A copy of the applicable terms which were sent on August 24, 2009 is attached hereto as Exhibit 4.

CP at 317-19.

James Ball attached to his affidavit the same "TM SALE DETAIL REPORT" attached to Patrick Sayers' affidavit. CP at 321. The cardmember agreement attached to Ball's affidavit, as Exhibit 1, does not have a date in the bottom right-hand corner and contains a copyright of 2006. Thus, the agreement attached to the Ball affidavit differs from the cardmember agreement attached to the earlier Sayers' affidavit. The 2006 agreement is not signed by any party. The reader cannot tell by reviewing Exhibit 3 if it confirms that changes in the cardmember agreement were mailed to Maurie Lemley.

Joshua Smith signed the other fresh affidavit in support of Discover Bank's second summary judgment motion. Smith testified, in the affidavit, in part:

8

1.      I am over the age of 18 years and I am competent to testify regarding the matters in this affidavit. I make this affidavit in the basis of my personal knowledge and a review of the files and records maintained by Discover with respect to the account at issue.

2.      I am an Account Manager for the Legal Placement Department for DB Servicing Corporation, the servicing affiliate of Discover Bank, an FDIC Insured Delaware State Bank. I am authorized to make this Affidavit on behalf of DB Servicing Corporation, as servicing affiliate of Discover Bank, and have reviewed the records with respect to the account at issue.

3.      The records produced with this Affidavit are in the possession and control of, and were created and/or maintained by DB Servicing Corporation. As an Account Manager for the Legal Placement Department for DB Servicing Corporation, I am responsible for managing and overseeing Discover accounts which have resulted in legal action. I am familiar with the manner and methods by which Discover Bank and DB Servicing Corporation create and maintain their business records, including computer records of accounts such as records of activities, charges and payments. All such records were made at or near the time of the events recorded and were made and kept in the ordinary course of the business of Discover by individuals having knowledge of the information reflected therein. I am a custodian of those records and have access to the records, and can attest as to the identity and authenticity of the records and their mode of preparation.

4.      Attached hereto as Exhibit A are true and accurate copies of statements sent the Lemleys from November 2006 to September 2010. These statements . . . are of the original transaction history and were reprinted for this litigation. Attached as Exhibit B are true and correct copies of payment stubs and checks from the Lemleys, making payment on their Discover account.

CP at 366-67.

Joshua Smith attached to his affidavit the same account statements attached to

Patrick Sayers' affidavit. Smith attached to his affidavit more checks and payment

coupons than attached to the earlier summary judgment brief.

9

Neither Joshua Smith's nor James Ball's affidavit stated they were filed in opposition to the Lemleys' second summary judgment motion. Nevertheless, the caption to Discover Bank's memorandum opposing the Lemleys' renewed summary judgment motion included the language, "AND IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT." CP at 354. The memorandum requested that the trial court consider the affidavits of James Ball and Joshua Smith in opposition to the Lemleys' motion.

In addition to using the Ball and Smith affidavits, Discover Bank opposed the Lemleys' summary judgment motion by noting that the Lemleys, in their initial response to its complaint, stated they "realize[d they] asked for this credit card." CP at 355. Discover Bank also pointed to the Lemleys' use of the credit card and the cancelled checks as evidence that they contracted with the bank.

The Lemleys objected to Discover Bank's motion for a summary judgment hearing on shortened time, on the twin grounds that the bank should not wait until near the deadline to file the motion and the bank based its motion on evidence not produced during discovery. The Lemleys filed a separate objection to the affidavit of James Ball on the ground that the affidavit attached documents Discover Bank failed to produce in discovery, including the additional cardmember agreement. In its memorandum in opposition to and in support of its summary judgment motion, Discover Bank claimed that the Lemleys never sought in discovery the original cardmember agreement attached

10

to James Ball's affidavit, since the request for production sought signed agreements and the original agreement was not signed. The Lemleys did not seek to strike the affidavit of Joshua Smith.

On June 15, the Spokane County Superior Court heard oral argument on the Lemleys' motion for summary judgment. At the beginning of the hearing, the Lemleys' counsel asked if the court intended to consider James Ball's affidavit. The court answered, "No, this is the defense motion." Report of Proceedings at 7. Later, Discover Bank's counsel asked the court to consider the Ball affidavit. The trial court affirmed its earlier ruling. Despite the court's ruling, Discover Bank's counsel, during its argument, referred to documents attached to the new affidavits. The Lemleys objected. The court sustained the objection. Thus, the court did not consider the affidavits of James Ball and Joshua Smith.

In a later order denying Discover Bank's motion for reconsideration, the court said, "Plaintiff's [pleadings] were clearly designated for its own later scheduled and noticed hearing. Cross motions should be captioned as such and noted to be heard together to afford notice to court and parties as to the evidence to be considered." CP at 851.

At the conclusion of the June 15 summary judgment hearing, the court stated:

> The burden to [Discover Bank] in summary judgment[,] when the motion is being brought by [defendants,] is to establish at least questions of material facts on their prima facie case.

11

As the court has reviewed the documents that have been provided since the original denial of summary judgment for [Discover], I have been looking for documentation in response to this motion to establish a prima facie case as to how that debt was identified, what the terms of that debt were, how they were defined, what are the material components of that contract.

CP at 712. "It does not," the court explained, "provide adequate evidence as a matter of law to computer generate a copy of what might have been terms at a particular point in time without a connection between those terms and the party being sued on those terms." CP at 712. "Response by affidavits or otherwise must set forth specific facts showing that there is a genuine issue for trial." CP at 713.

In its written order, the trial court repeated its reasoning. The order reads that the affidavit and supporting documents Discover Bank submitted in "opposition to [the Lemleys'] Motion for Summary Judgment and *in support of [Discover's] Motion for Summary Judgment* do not contain the . . . reliable foundation, pursuant to Court Rule 56(e), to establish that the Affiant had personal information about the alleged obligation in the amount of $5,729.78." CP at 718 (emphasis added). The bank's failure to provide competent evidence establishing an essential element of its case—damages—entitled the Lemleys to summary judgment.

In a motion to reconsider, Discover Bank contended the court erred when it refused to consider the affidavits and exhibits filed in support of its own motion for summary judgment. In their response to the motion, the Lemleys argued that the court

correctly excluded the filings because they were untimely under the court's scheduling order. In an order denying the motion to reconsider, the court stated it considered the bank's memorandum jointly offered in opposition to the Lemleys' motion and in support of the bank's motion. The court, however, refused to consider the attachments to the memorandum because of a lack of authentification. "Any other summary judgment pleadings," the court explained, "were clearly designated for [Discover's] own later scheduled . . . noticed hearing." CP at 851. If Discover intended that motion as a cross motion, it "should be captioned as such and noted to be heard together to afford notice to court and parties as to the evidence to be considered." CP at 851.

Based on CR 54(d)(2), RCW 4.84.250, .270, and .330, the court awarded the Lemleys attorney fees and costs.

## LAW AND ANALYSIS

Discover Bank contends the trial court made three errors when granting the Lemleys summary judgment. First, the trial court erroneously ignored affidavits submitted in support of Discover's motion for summary judgment. Second, even without those additional pleadings, the affidavits submitted in opposition to the Lemleys' motion were sufficient to establish an issue of material fact. Third, even if all affidavits were properly excluded, the Lemleys' own admissions and conduct raised a genuine issue of material fact of whether a debt is owed. We only address the first argument because we rule the court should not have ignored the affidavits of Joshua Smith and James Ball on

13

the basis that they were not labeled in their respective captions as being submitted in opposition to the Lemleys' motion.

No decision directly addresses the facts and issues raised. We rely on a Ninth Circuit Court of Appeals decision and two Washington decisions that indirectly address our question, in addition to Washington's liberal policy of applying its civil rules.

In *Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1134-35 (9th Cir. 2001), the federal court prescribed the scope of pleadings a district court must review to determine whether summary judgment is appropriate, under the circumstances when opposing parties file cross motions for summary judgment. The plaintiffs, unlike the defendant, did not file evidence in opposition to the defendant's motion for summary judgment. Instead, they "relied on the evidence that they had submitted in support of their motion for summary judgment." *Id.* The trial court granted the defendant's motion for summary judgment because, in part, plaintiffs had not submitted any admissible evidence in opposition to the defendant's motion for summary judgment. *Id.* The Ninth Circuit reversed, holding "that the district court was required to review the evidence properly submitted in support of [plaintiffs'] motion to determine whether it presented a disputed issue of material fact precluding summary judgment in favor of [d]efendants." *Id.* The trial court must consider each party's evidentiary showing, regardless of under which motion the evidence was tendered. *Id.* Numerous United States District Courts within the Ninth Circuit Court of Appeals have followed the

14

holding of *Fair Housing*. *See Oakley, Inc. v. Nike, Inc.*, 2013 WL 6726782 at 3 (C.D. Cal. 2013); *Conceptus, Inc. v. Hologic, Inc.*, 771 F. Supp. 2d 1164, 1174 (N.D. Cal. 2010); *Zhang v. Napolitano*, 663 F. Supp. 2d 913, 918 (C.D. Cal. 2009); *Wilson v. Costco Wholesale Corp.*, 426 F. Supp. 2d 1115, 1118 (S.D. Cal. 2006).

Our case on appeal has distinguishing circumstances from *Fair Housing v. Riverside Two*. Discover Bank, who filed its motion last, did not label its motion as a cross motion as may have been done by the plaintiffs in *Fair Housing*. Cross motions for summary judgment are typically scheduled to be heard at the same hearing. Discover Bank scheduled its hearing for a date later than the hearing for the Lemleys' motion. We discount the importance of these distinctions. Discover Bank's motion was pending at the time the trial court reviewed the Lemleys' motion. Although Discover Bank did not label the affidavits of Joshua Smith and James Ball as opposing the Lemleys' summary judgment motion, Discover Bank captioned its summary judgment brief as supporting its motion and opposing the Lemleys' motion. The brief declared that the Smith and Ball affidavits should be reviewed when addressing the Lemleys' summary judgment motion.

In *Mithoug v. Apollo Radio of Spokane*, 128 Wn.2d 460, 909 P.2d 291 (1996), Joyce Mithoug and a co-worker sued their employer for discrimination and retaliatory discharge. The trial court granted the employer summary judgment. Its order stated that it did not consider depositions on file. The order did not declare the reason for ignoring the depositions, but the reason may have been that the depositions were not attached to a

brief or affidavit. When reviewing the summary judgment dismissal, we granted the employer's motion to strike the deposition testimony, since the trial court had not considered the depositions. The Supreme Court reversed us. The trial court had entered an order publishing the depositions. Joyce Mithoug referred to the depositions by page and line numbers in her memorandum. Thus, the trial court failed to consider the depositions in opposition to the employer's summary judgment motion. CR 56(c) directs the court to consider "pleadings, depositions, answers to interrogatories, and admissions *on file*, together with the affidavits, if any." (Emphasis added.) The depositions were in the court file and CR 56 does not require they be attached to any pleading. A liberal reading of *Mithoug* requires the trial court to consider any admissible evidence found in its file when deciding a summary judgment motion.

In *Peterson v. Pacific First Federal Savings & Loan Ass'n*, 23 Wn. App. 688, 598 P.2d 407 (1979), our court reversed the trial court's denial of a summary judgment motion brought by the defendant. The trial court ignored the defendant's admissions to the plaintiff's factual allegation in his complaint and a disbursement order in the guardianship proceeding. The trial court should have considered those pleadings on file and granted summary judgment to the defendant. A liberal reading of *Peterson* also demands that the trial court consider any admissible evidence found in its file when deciding a summary judgment motion.

When applying the civil rules, we should employ practical, rather than technical

solutions to questions. *Kohl v. Zemiller*, 12 Wn. App. 370, 372, 529 P.2d 861 (1974).

We should avoid procedural traps for the litigants. *Gott v. Woody*, 11 Wn. App. 504,

508, 524 P.2d 452 (1974). We hold that under these circumstances, when a party

opposing a summary judgment motion also has a pending summary judgment motion and

the opposing party references affidavits supporting its summary judgment motion in its

brief opposing the other party's summary judgment motion, the court should consider

those affidavits when reviewing the first summary judgment motion.

By our ruling, we do not preclude the trial court from striking the affidavits of

James Ball and Joshua Smith on other grounds. The Lemleys objected to one or more of

the affidavits because they were untimely and because the information and witnesses

were not previously disclosed in discovery. The trial court did not address these

objections because it ignored the affidavits on another ground. On remand, the trial court

should address these objections of the Lemleys, if and when the Lemleys renew their

motion for summary judgment. Our ruling also does not address whether Joshua Smith

or James Ball qualifies to testify to the facts stated in their respective affidavits or

whether either qualifies to identify the documents attached to their respective affidavits.

If the trial court denies the Lemleys' motion to strike because of untimeliness or

discovery violations, the trial court will need to otherwise determine the admissibility of

the two affidavits.

## CONCLUSION

We remand the case to the trial court for further proceedings. If the Lemleys renew their summary judgment motion, the trial court should consider affidavits submitted by Discover Bank in support of its summary judgment motion, unless the trial court rules that the affidavits should not be considered because of the failure to comply with discovery, because of their untimeliness, or because of evidence rules.

We also vacate the judgment in favor of the Lemleys and their counsel for attorney fees and costs. The trial court should readdress an award of fees and costs, including fees and costs on appeal, upon completion of the case.

_____
Fearing, J.

WE CONCUR:

_____
Korsmo, C.J.

_____
Kulik, J.P.T

18